### GREGG v. SANFORD et al.

(Circuit Court of Appeals, Third Circuit. January 2, 1895.)

No. 15.

1. TAXATION—PENNSYLVANIA STATUTES—JOINT-STOCK ASSOCIATIONS.

A joint-stock association is not subject to taxation under the acts of Pennsylvania of May 1, 1868, April 24, 1874, March 20, 1877, and June 7, 1879, imposing taxes upon the capital stock of "incorporated" companies.

**2. CONSTITUTIONAL LAW—SUIT AGAINST A STATE.**

A suit against an officer of a state, charged with the duty of assessing and collecting taxes, to restrain him from levying upon complainant a tax not authorized by law, is not a suit against the state.

**3. EQUITY JURISDICTION—CLOUD ON TITLE—ILLEGAL TAX.**

Equity has jurisdiction to restrain the assessment of taxes when such assessment is without authority of law, and would create an apparent lien upon real estate, and so a cloud upon the title thereto, and evidence aliunde the assessment is required to show its invalidity.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a suit by Henry Sanford, Clarence Seward, and Levi C. Weir against D. McM. Gregg, auditor general of the commonwealth of Pennsylvania, to restrain the assessment of a tax. The circuit court rendered a decree for the complainants. Defendant appeals.

W. U. Hensel and Lyman D. Gilbert, for appellant.

George Tucker Bispham and B. H. Bristow, for appellees.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

ACHESON, Circuit Judge. The first question which we will consider is whether the Adams Express Company is subject to taxation under the several acts of assembly of the state of Pennsylvania recited in the bill, namely of May 1, 1868, of April 24, 1874, of March 20, 1877, and of June 7, 1879, whereby an annual tax was imposed upon the "capital stock" of all companies "incorporated" by or under any law of the state of Pennsylvania, and of every company "incorporated" by any other state and doing business in the state of Pennsylvania. It appears that the Adams Express Company was formed by certain individuals, by articles of agreement dated July 1, 1854, signed in the city of New York, where the principal office of the company was located, for the purpose of carrying on the express business for a limited period. The articles of association provide that the proportionate interests of the associated members shall be represented by shares of stock—having, however, no par or fixed money value—transferable on the books of the association; that the death of a shareholder shall not dissolve the association; that the business of the association shall be conducted by a board of managers, and its property held by three trustees. By statutes of the state of New York existing at the date of the formation of the Adams Express Company, it was enacted that any joint-stock company or association might sue or be sued in the name of the president or treasurer thereof, and that no suit should abate by reason of the death, removal, or resignation of such officer; that it should be lawful for such association to provide by their articles of association that the death of any stockholder or the assignment of his stock should not work a dissolution of the association, and to devolve upon any three or more of the "partners" the sole management

of their business. These statutes, however, declared that nothing therein contained should be construed to confer on joint-stock companies or associations any of the rights or privileges of corporations, except as therein specially provided. In the case of People v. Coleman, 133 N. Y. 279, 31 N. E. 96, the court of appeals of New York carefully considered the question whether the National Express Company, a joint-stock association of that state, having an organization similar to that of the Adams Express Company, was liable to taxation on its capital stock as a corporation. The court there held that, notwithstanding various legislative enactments extending the powers of joint-stock companies, and clothing them with many of the essential attributes possessed by and characteristic of corporations, the distinction between the two classes of organizations was still preserved, and a joint-stock company was not taxable upon its capital stock under the provisions of the statute of New York subjecting "all moneyed or stock corporations deriving an income or profit from their capital or otherwise" to such a tax. This construction of the statutes of New York by the highest judicial tribunal of that state is conclusive here. Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121; Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227. We therefore may affirm confidently that the Adams Express Company was not incorporated by or under the laws of the state of New York. It is not pretended that it was constituted a corporation elsewhere. The answer expressly admits that it was not incorporated by or under any law of the state of Pennsylvania. Upon what principle, then, can it be held to be taxable under acts which impose a tax upon the capital stock of incorporated companies? In truth, the Adams Express Company was brought into being wholly by the contract of its individual members inter se, expressed in their articles of association, and was not of statutory origin. It is, we think, very clear that such a joint-stock association is not a corporation, but a partnership. This, as we have seen, has been adjudged by the court of appeals of New York. It is the settled rule in Massachusetts. Taft v. Ward, 106 Mass. 518; Railroad v. Pearson, 128 Mass. 445; Gleason v. McKay, 134 Mass. 419. The supreme court of the United States, in the case of Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, distinctly laid down the same doctrine.

It will be perceived that the question before us is one of construction. By the express provisions of the acts of assembly here involved, a tax is imposed upon every "company incorporated" by or under the laws of Pennsylvania, or by or under the laws of any other state. It is, however, certain that the Adams Express Company is not incorporated. It is, therefore, without the terms of the acts. There is no language whatever in any of these acts to bring within their operation an unincorporated joint-stock company. This the legislature of Pennsylvania has recognized; for the act of June 1, 1889, imposes for the future an annual tax upon the capital stock of "every corporation, joint-stock association and limited partnership whatsoever, now or hereafter

incorporated or organized by or under any law of this common wealth, or of any other state, * * * doing business in this commonwealth." We find no decision by the courts of Pennsylvania giving any countenance whatever to the idea that a voluntary association, such as the Adams Express Company, is to be deemed a corporation. The case of Coal Co. v. Rogers, 108 Pa. St. 147, relates to a class of artificial persons formed under the act of June 2, 1874, and thereby clothed with every essential attribute of a corporation at common law, and scarcely differing therefrom except in name. Nor can we accept as sound the argument based on section 13 of article 16 of the constitution of Pennsylvania, which article imposes restrictions and liabilities upon, and reserves legislative control over, private corporations, but does not relate to the subject of taxation. That section reads thus:

"The term 'corporations,' as used in this article, shall be construed to include all joint stock companies or associations having any of the powers or privileges of corporations, not possessed by individuals or partnerships."

The definition of the term "corporations" here, it will be perceived, is expressly confined to that particular article of the constitution, and the section does not at all sanction, but rebuts, the suggestion that the term "corporations," as used in general legislation, is to be construed as covering joint-stock companies or associations.

We discover nothing in the ruling of the supreme court of Massachusetts in Oliver v. Insurance Co., 100 Mass. 531, or in the ruling of the supreme court of the United States in that case upon error (Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566),—especially in view of the later above-cited decisions of those courts,—to excite any doubt as to the correctness of our conclusion here. The Massachusetts statute expressly applied to every "insurance company incorporated or *associated* under the laws of any government, or state other than one of the United States"; and the Liverpool Company, although organized under a deed of settlement, had been invested by several acts of parliament with all essential rights of a corporate nature, and was empowered to act independently of the rules which govern an ordinary partnership. As, therefore, it came within the express terms of the Massachusetts statute, and had been permitted by the comity of the state to exercise its functions therein, it was held that no exemption from regulations appropriate to the action of the collective body could be claimed on account of the citizenship or nationality of individual members of the association. We fully concur with the court below in the opinion that the Adams Express Company was not chargeable with taxes under the acts of assembly in question, and that in proceeding to settle an account for taxes against the company from May 1, 1868, to the first Monday of November, 1868, and for each succeeding year thereafter down to the first Monday of November, 1888, together with a superadded penalty of 20 per cent. for default, amounting in all to the sum of $61,749.99, the defendant below, D. McM. Gregg, auditor general of Pennsylvania, acted without any lawful authority.

But it is objected that this was substantially a suit against the

state of Pennsylvania, within the inhibition of the eleventh amendment to the constitution of the United States. We have seen, however, that the taxes which the defendant sought to impose upon the Adams Express Company were not authorized by the state. The defendant, therefore, while claiming to act in his official capacity, was really proceeding without any legal warrant. This case, then, belongs to that class of suits which have been sustained against individuals who, under color of state authority, have been guilty of, or threatened to inflict, personal trespasses and wrongs. In Cunningham v. Railroad Co., 109 U. S. 446, 452, 3 Sup. Ct. 292, 609, the general subject was discussed; and, recognizing the jurisdiction of the court in cases of this kind as resting on a sure foundation, the court said:

"Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defense is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense, he must show that his authority was sufficient in law to protect him."

Suits against persons holding office under a state for illegal acts done under color of an unconstitutional law of the state are not suits against the state. Pennoyer v. McConnaughy, 140 U. S. 1, 10, 11 Sup. Ct. 699. In the last-cited case the court, speaking through Mr. Justice Lamar, reaffirmed the doctrine of the leading case of Osborn v. Bank, 9 Wheat. 738, that, where grounds of equity jurisdiction exist, an injunction from a circuit court will lie to restrain a person who is a state officer from performing an official act directed by an unconstitutional statute of the state. In the case of Reagan v. Trust Co., 154 U. S. 362, 390, 14 Sup. Ct. 1047, the court said:

"A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it, in the matter of assessment or collection, as to work an illegal trespass upon the property rights of the individual. They may go beyond the powers thereby conferred, and when they do so the fact that they are assuming to act under a valid law will not oust the courts of jurisdiction to restrain their excessive and illegal acts."

These authorities sufficiently answer the objection to jurisdiction based upon the eleventh amendment.

It is, however, further urged against the decree of the circuit court that the complainants' case, if the facts be as they allege, was not one for equitable relief; and it remains for us to consider this point. Here, in the first place, we may remark that, in a suit by a citizen of Pennsylvania in one of her own courts to enjoin the collection of a tax not authorized by law, this objection would have no force. The supreme court of Pennsylvania has repeatedly held that where there is a want of power to tax, without anything more, equity will enjoin. Appeal of Conners, 103 Pa. St. 356; Harper's Appeal, 109 Pa. St. 9, 1 Atl. 791; Banger's Appeal, 16 Wkly. Notes Cas. 289, 295. Now, in Cummings v. Bank, 101 U. S. 153, 157, the fact that relief by injunction against the collection of illegal taxes was given in the state

courts under a statute was regarded, upon the question of remedy in the federal court, as entitled to the greatest weight. But we do not put our decision upon the practice in the courts of Pennsylvania. Having regard to general principles, we think this case presents clear ground for equitable redress, aside from the mere illegality of the tax. The proceeding for the settlement of taxes here is under the provisions of the act of March 30, 1811 (P. L. 145; Purd. Dig. 1747), the twelfth section of which provides that the amount or balance of every account, settled agreeably to this act, due to the commonwealth, shall be a lien from the date of such settlement on all the real estate of the debtor within the commonwealth. The bill alleges that the Adams Express Company is the owner of valuable real estate in the state of Pennsylvania, within the cities of Philadelphia and Pittsburgh, upon all of which the settlement of taxes will create an apparent lien and a cloud, and prevent the company from selling or disposing of the same until all the litigation concerning said taxes shall have been ended. Now, to prevent a threatened cloud upon the title to real estate, or to remove it if existing, is an acknowledged head of equity jurisdiction. De Witt v. Van Schoyk, 110 N. Y. 7, 11, 17 N. E. 425; Dull's Appeal, 113 Pa. St. 510, 6 Atl. 540; Story, Eq. Jur. § 711a. Preventive relief by injunction against an illegal tax which would cast a cloud upon the title to real estate is within the settled powers of a court of equity; and where a tax on its face appears to be valid, and evidence aliunde is necessary to show its invalidity, equity will interfere. Cooley, Tax'n, 542, 543; High, Inj. §§ 524, 526. The books are replete with cases in which equity has interposed to prevent or cancel a cloud upon title to land arising from illegal tax assessments or sales thereunder, or from tax deeds, where the proceeding sought to be enjoined or set aside was prima facie valid, and it was necessary to prove extrinsic facts to show its illegality. Tilton v. Road Co., 3 Sawy. 22, Fed. Cas. No. 14,055; Holland v. Mayor, etc., 11 Md. 186, 197; Leslie v. City of St. Louis, 47 Mo. 474; Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471; Hamilton v. City of Fond du Lac, 25 Wis. 496; Litchfield v. Polk Co., 18 Iowa, 71; Scofield v. City of Lansing, 17 Mich. 437; Reed v. Tyler, 56 Ill. 288. The supreme court of the United States, in Gage v. Kaufman, 133 U. S. 471, 10 Sup. Ct. 406, proceeding as well upon general equitable principles as upon the Illinois decisions, sustained a bill in equity to remove a cloud upon title created by a tax deed. In Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, the court distinctly ruled that a bill charging that the collection of an illegal tax would involve the plaintiff in a multiplicity of suits as to the title of lots being laid out and sold, which would prevent their sale, and would cloud the title to all the plaintiff's real estate, states a case for relief in equity. And, speaking for the court, Mr. Justice Bradley there said:

"Even the cloud cast upon his title by a tax under which such a sale could be made would be a grievance which would entitle him to go into a court of equity for relief."

In all the decisions of the supreme court relating to the general subject of the appropriate relief against the collection of taxes ille-

gally imposed, it is laid down as a proposition not to be doubted that, where the illegal tax is upon real estate, and would throw a cloud upon the plaintiff's title, the case comes under a recognized head of equity jurisdiction. Dows v. City of Chicago, 11 Wall. 108, 110; Shelton v. Platt, 139 U. S. 591, 594, 11 Sup. Ct. 646; Express Co. v. Seibert, 142 U. S. 339, 348, 12 Sup. Ct. 250. In the present case the proceedings complained of would most certainly throw a cloud upon the title of all the real estate of the Adams Express Company within the state of Pennsylvania; for those proceedings prima facie are valid, and extrinsic evidence, to wit, proof that the company was not in fact a corporation, would be necessary in order to show that the taxes were illegally imposed. Thus there was a firm basis for equitable intervention.

We have not overlooked the act of assembly of April 14, 1827 (Purd. Dig. 1774), nor the rulings thereunder that, to give the commonwealth *priority* over other lien creditors, a certified copy of the settlement under the act of 1811 must be filed in the county where the land is. Wm. Wilson & Son Silversmith Co.'s Estate, 150 Pa. St. 285, 24 Atl. 636. No case, however, decides that a purchaser would not be affected by the lien expressly created by the twelfth section of the act of 1811, and no prudent counsel would advise that the purchaser would take free of the lien. Moreover, the act of 1827 makes it the imperative duty of the auditor general to transmit to the prothonotaries of the respective counties where the lands lie certified copies of the liens. The filing of these transcripts is a part of the procedure, and is positively enjoined by the act. Therefore, the suggestion that the defendant does not intend here to file transcripts amounts to nothing. In this court he defends his right to make the tax settlement, and impliedly asserts his right to do whatever may be necessary to make it an effective lien.

Having thus seen that the threatened cloud upon their title justified the complainants in seeking redress in an equitable forum, we need not consider the other alleged grounds for sustaining the bill, namely, the element of a trust, and the avoidance of a multiplicity of suits.

In conclusion, it may be observed that, if the taxes in question were paid, there is no way in which they could be recovered back, for the payment would be into the state treasury, and the statutes of Pennsylvania do not authorize a suit against the state. Aside from this bill, the only remedy open to the complainants was an appeal to the court of common pleas of Dauphin county; but the existence of that special statutory mode of redress did not bar the equity jurisdiction of the circuit court of the United States. Barber v. Barber, 21 How. 582, 592; Kirby v. Railroad Co., 120 U. S. 130, 138, 7 Sup. Ct. 430. The decree of the court below is affirmed.