MERCUR GOLD MINING & MILLING COMPANY, RESPONDENT, *v.* WILLIAM SPRY ET AL., APPEL-LANTS.

TAXATION OF NET ANNUAL PRODUCT OF MINES—ILLEGAL ASSESS-MENT WITHOUT JURISDICTION—CONSTITUTIONAL LAW—ILLEGAL-ITY OF SPECIAL SCHOOL TAX—SELF-EXECUTING PROVISIONS OF THE CONSTITUTION—INJUNCTION TO RESTRAIN COLLECTION OF VOID TAX—PROSPECTIVE OPERATION OF STATUTES.

1. *Self-Executing Clause—Taxation of Net Product of Mines.*

Section 4, art. 13, of the constitution, declares that the net annual product of mines and mining claims shall be taxable as provided by law. Prior to this declaration the net annual product of mines and mining claims was not taxable. The effect of this provision was not to presently tax the net annual product of mines, but it had reference to a law that should thereafter be enacted for that purpose, and contemplated that the net product should be ascertained and taxed at the end of the fiscal year. This provision of the constitution was not self-executing. "Where a constitutional provision furnishes no rule for its own enforcement, or where it expressly or impliedly requires legislative action to give effect to the purposes con-templated, it is not self-executing."

2. *Prospective Operation of Statutes.*

Constitutions, as well as statutes, should operate prospectively only, unless the words employed show a clear intention that they should have a retrospective effect. This rule of construc-tion of statutes should always be adhered to, unless there is something on the face of the statute putting it beyond doubt that the legislature meant it to operate retrospectively.

3. *Assessment of Net Annual Product of Mines.*

The revenue act of 1896 was enacted and became operative April 5, 1896. Sections 62–65 of this act have reference to the assess-ment of the net annual product of mines. In making assess-ments upon the net annual product of mines for the year 1896,

nothing but such proceeds up to the 1st day of June could be assessed or taxed, after it was ascertained on the 1st day of June, 1896.

4. *Fiscal Year—Assessment of Net Annual Product of Mines.*

The fiscal year for the assessment of the net annual product of mines, under the statute, commences on the 1st day of June of each year. Such net product from the 1st day of June to the 31st day of December, 1896, was not assessable or taxable until it was ascertained in June of the following year, and could not be included in the assessment for 1896, but could be included in the tax of 1897. By including in the assessment for the year 1896 the net estimated annual product of the mine from June 1 to December 31, 1896, without authority of law, rendered the tax on such estimated product illegal and void.

5. *Basis of Assessment.*

In assessing the net product of the mine for the year 1896, the assessor could not take the net product of the mine for the year 1895 as a basis for ascertaining the amount of the assessments from the 1st day of January to the 31st day of December, 1896.

6. *Illegal Assessment of Special School Tax—Injunction to Restrain Collection of Illegal Tax.*

When, prior to the commencement of suit, the respondent voluntarily paid to the assessor $1,750, which would be 17½ mills on the dollar, on the basis of a $100,000 valuation, and the net proceeds of the mine from January 4 to June 1 did not exceed that sum, and the total assessment of 27½ mills on the dollar included a special school tax of 10 per cent, and such special school tax was assessed without any authority in law, but was illegal and void, and was not merely an over-assessment, informality or irregularity, *held*, that such payment was sufficient to cover the assessment on the net product of the mine from January 4 to June 1, 1896. *Held*, further, that where a statute provides for the levying of a special tax by a school district, and prescribes the manner in which such levy must be made, a compliance with the requirements of the statute is necessary to the validity of the tax, and an injunction will lie to restrain the collection of such illegal tax, assessed without jurisdiction, when the tax will create a cloud on the title to real estate.

7. *Same—Injunction to Restrain Collection of Void Tax.*

Under Laws 1896, p. 465, § 179, the right to restrain the collection of an illegal and unauthorized tax, levied without jurisdiction, is plainly given; but such remedy should not be invoked except in clear cases, based upon unquestionable facts, coming within the clear terms, letter, and spirit of the statute.

8. *Retrospective Law.*

Whether the revenue act of 1896 is retrospective or not, so as to permit an assessment on the net product of mines from the 4th day of January, when the constitution was adopted, to the 5th day of April, 1896, when the statute for assessing such product was enacted, is not determined, as the tax was voluntarily paid for that period before this action was brought.

(No. 898.    Decided March 14, 1898.)

Appeal from the Third district court, Tooele county. A. N. Cherry, *Judge.*

Action by the Mercur Gold Mining & Milling Company against William Spry, collector of Tooele county, and Tooele county. Plaintiff had judgment, and defendants appeal. *Affirmed.*

This action was commenced to annul and declare void a tax sale made of respondent's mining claim for taxes levied and assessed upon the net annual proceeds of its mine for the year 1896. The findings show: That the assessor of Tooele county failed to list or assess the net proceeds of respondent's mine in the manner provided for assessment of other property, but in June, 1896, assessed the net annual proceeds of the mine for the year 1896 at $350,000, upon the basis of the net annual proceeds of said mine between June 1, 1895, and June 1, 1896, and returned said estimated assessment and list to the collector, whereupon there was carried upon the assessment books of the county a state tax of 5 mills, a state school tax of 3 mills, a county tax of 5 mills, a school tax of 2 mills, and a special

school tax of 12½ mills, on the dollar, for the district of Mercur, making a total tax levy against respondent of 27½ mills on the dollar, or $9,625, on the estimated assessment of $350,000. That the entire net proceeds of the mine between the 1st day of June, 1895, and the 4th day of January, 1896, were $171,874.99; that the entire net proceeds of its mine between the 4th day of January, 1896, and the 5th day of April, 1896, were $54,641.47; and between the 5th day of April, 1896, and the 1st day of June, 1896, $32,-537.87,—which facts appear from the respondent's books, which were at all times accessible to the assessor. That when the respondent first learned of the assessment, in October, 1896, it applied to have the assessment corrected, but the commissioners of the county refused such request. That no notice of the kind, valuation, or taxes levied upon the net proceeds of the mine, nor any notice of the day fixed for hearing complaints before the commissioners, was given or served upon the respondent at any time. That the respondent had no notice or knowledge of any assessment on said mine until October, 1896, when it was notified to pay the amount of $9,625 as taxes so assessed. That no notice of any meeting to act upon assessment was ever given. That 10 mills upon the dollar, levied for the special school tax for the district of Mercur, was not levied or attempted to be levied by the resident taxpayers of the district, at any public meeting called or held for the, or for any, purpose of levying taxes; but the same was attempted to be levied by the trustees of the district, at a trustees' meeting, held on December 17, 1895. That between the date of filing the complaint and service of summons and restraining order, the collector sold to Tooele county, for said taxes, the mining claim of respondent, and delivered a certificate of sale, in due form, to the commissioners

16 UTAH—15

of the county, which was duly recorded. That this certificate was regular upon its face, and the appellants claim a valid tax certificate of sale thereunder. That prior to the commencement of this action respondent paid to the appellant $1,750 of said tax of $9,625 so levied, being 17 mills on $100,000; but appellants claim a further sum of $7,995.87, the balance of unpaid taxes, with penalties and costs. That in ascertaining and determining, for the purpose of assessment, the net proceeds of said mine for the year 1896, said assessor estimated the net proceeds of said mine from the 1st day of June, 1895, to the 1st day of June, 1896, and used the amount so found as the basis from which to determine the proceeds of said mine for the year 1896. That the respondent had no plain, speedy, and adequate remedy at law. That at the time of commencing this action the judge of said district court held that the facts stated in the complaint presented an unusual case, where the remedy provided against illegal taxes was inadequate, and granted the injunction for that reason. As conclusions of law, the court found that section 4, art. 13, of the constitution, was not self-executing, and was not in force until April 5, 1896; that the law imposing taxes upon the net annual proceeds of the mine was a new burden, and should be construed as prospective; that the 10-mill special school tax of Mercur district was void; that the payment of $1,750 taxes was in accordance with justice; that the taxes levied in excess of that sum were void; that the sale of the mine for the illegal tax created a cloud upon respondent's title, was void, and should be removed. A decree was entered for respondent accordingly. From this decree defendants appealed.

*A. C. Bishop, Atty. Gen.*, and *Benner X. Smith, Asst. Atty. Gen.*, for appellants.

*Frank Pierce* and *J. E. Frick,* for respondent.

After stating the facts, Miner, J., delivered the opinion of the court:

Under the facts shown and found by the trial court, the questions to be determined in this case are—First, for what period of time and to what extent is the respondent liable for taxes upon the net annual proceeds of its mine for the year 1896 under the constitution and laws of this state in force at that time? And, second, was the special school tax in the Mercur district for the year 1896 a legal, binding tax, for which respondent was liable, and was the remedy selected and asked for under its amended and supplemental complaint, the proper remedy in such case?

The constitution of the state of Utah came into existence, and was of binding force and effect, on and after the 4th day of January, 1896. Under section 2, art. 24, of the constitution, all laws of the territory of Utah up to that time, not repugnant to the constitution, remained in force until they expired by their own limitation, or were altered or repealed by the legislature. At the time the constitution became operative, there existed no territorial law providing for the taxation of mines or the net annual proceeds thereof. Subdivision 11, § 2009, Comp. Laws Utah 1888, in force when the constitution was adopted, expressly provides that mining claims and the product of mines and the ore in mines were exempt from taxation. Section 4, art. 13, Const., declares that "the net annual proceeds of mines and mining claims shall be taxed as provided by law." By this declaration the net annual proceeds of mines were no longer exempt, but were declared to be the subject for taxation as provided by law. At this time there was no provision of the statute by which such proceeds could be taxed, and by which such net an-

nual proceeds could be ascertained. By the term "net annual proceeds of the mine" is meant what is annually realized from the product of the mine, over and above all the costs and expenses of obtaining such proceeds and converting the same into money. This construction was afterwards prescribed by section 64, p. 442, of the revenue laws of 1896. The effect of this provision of the constitution was, not presently to tax the annual product of the mines, but to declare that such product should be taxed as provided by law. This did not mean the present law, for there was no law making any such provision for taxation, but had reference to a law that should thereafter be enacted by the legislature for that purpose. This provision was a mandate or command to the legislature to enact a law by which the subject, or net annual proceeds of the mine, could be legally assessed. The product of a mine is usually uncertain. While the product may be large the first year, it may be greatly lessened, or the losses and expenses overbalance the product, the second year. With respect to the taxation of the net annual product of a mine, it must have been contemplated that the product should be ascertained at the end of the fiscal year, and should not be simply estimated by the assessor on the basis of its net product the previous year. Nor could it have been intended that the assessment should be levied unless there was some net annual product to levy it upon at the end of the year. This provision in the constitution contemplated that something more was to be done to carry out its mandate, and was, therefore, not self-executing. As a general rule, "where a constitutional provision furnishes no rule for its own enforcement, or where it expressly or impliedly requires legislative action to give effect to the purposes contemplated, it is not self-executing." 6 Am. & Eng. Enc. Law, 915. So, where the provision points to something

more to be done, and looks to some future time for the accomplishment of what is required, the general rule is that it contemplates legislation to carry it into effect. *Morley* v. *Thayer,* 3 Fed. 740; *In re House resolution* (Colo. Sup.), 21 Pac. 471; *City of New Castle* v̇. *Lawrence Co.,* 2 Pa. Dist. R. 95; Suth. St. Const., 362, 363.

After the adoption of the constitution, the revenue act of 1896 was enacted. This law was approved and went into effect April 5, 1896. By subdivision 18, § 43, of this statute, assessments made in accordance with law before this statute went into effect were validated. The provision referred to in the constitution not being self-executing, and there being no law for the assessment of the net annual product of mines, this act could not apply to such product until it took effect, on April 5, 1896. Sections 62-69 of the revenue act, above referred to, applied to the assessment of the net annual product of mines, created a new burden, and therefore, under the rules of law, are subject to a strict construction. Suth. St. Const. §§ 362, 363.

Constitutions, as well as statutes, should operate prospectively only, unless the words employed show a clear intention that they should have a retrospective effect. This rule of construction as to statutes should always be adhered to, unless there be something on the face of the statute putting it beyond doubt that the legislature meant it to operate retrospectively. Cooley, Const. Lim. p. 73; Suth. St. Const. §§ 463-465. While this is true, still there is no doubt but that the basis of apportionment of taxes may be as lawfully retrospective as the reverse. Cooley, Tax'n, p. 291. Section 3, art. 13, of the constitution, requires all assessments to be uniform, and taxation to be according to its value in money. Section 4, art. 13, of the constitution, requires that all net annual products of all

mines and mining claims shall be taxed as provided by law. This is a limitation on the power of the legislature, so that, so far as the product is concerned, nothing can be taxed except the net annual product of the mine. The legislature doubtless had this limitation in mind when sections 62-65 were enacted. How the net proceeds shall be ascertained, the time for which net proceeds shall be taxed, etc., are clearly set forth in these sections of the statute, and only that which exists and has been ascertained as the annual net proceeds of the mine is to be assessed and taxed. Under sections 62, 63, of this act, it is provided that the mining company or corporation must, between the 1st and 10th day of June in each year, make out a statement of the gross yield of minerals and metals, during the year preceding the 1st day of June of each year, and give the value thereof, and deliver the same, duly verified, to the assessor of the county, together with the expenses of converting the same into money. Under this section the net proceeds are to be ascertained only at the end of the year, which is fixed as the 1st day of June. The net value, thus obtained, up to the 1st day of June, can only be assessed and taxed. The net proceeds of the mine, obtained after the 1st day of June, cannot be taxed for the year in which the assessment is made, because there is no legal way provided for ascertaining what such net proceeds are, and such net proceeds are not in legal existence, for the purpose of taxation, until ascertained according to law on the 1st day of June. A taxpayer should not be assessed on property he does not own.

Section 1, art. 13, of the constitution, provides that the fiscal year for revenue taxation shall begin on the 1st day of January, unless changed by the legislature. The legislature, by enacting section 62 of the revenue act, has seen fit to change the fiscal year, for the purpose of assessing

the net annual proceeds of mines, from January 1st to June 1st. The revenue act did not take effect until April 5, 1896, and the assessor could not take the net proceeds of the mines for 1895 as the basis for ascertaining the amount of his assessment from January 1, 1896, to December 31, 1896. In making the assessment, the assessor assessed the net proceeds of the mine at $350,000 for the whole year, covering a period from January 1, 1896, to December 31, 1896. The basis of such assessment was the estimated net annual proceeds of the mine between June 1, 1895, and June 1, 1896, thus including a period from June 1 to December 31, 1896, when there was and could be no ascertainment of what the net proceeds of the mine could be, except from estimates of a period in 1895 not covered by the statute, and not taking into consideration the fact that the mine might not produce anything during the period from June to December, but might be an actual burden to the owner during that time. The estimate made on the basis of the earnings during 1895 was unauthorized, because it included a period not covered by the constitution or statute. The assessment for net earnings from June to December 31, 1896, was not authorized, because it could not then be ascertained what the net annual product would be during that period, after deducting the expenses of converting the ore into money. Up to January 4, 1896, proceeds of mines were exempt from taxation, and from that time were subject to taxation as might be provided by law thereafter. The enactment of the revenue act, approved April 5, 1896, made the net annual product taxable June 1, 1896. Up to June 1, 1896, there was no net product of the mine that was taxable, and no law by which it could be ascertained or taxed. Whether the net product of the mine from January 4 to April 5, 1896, was taxable or not, it is not necessary to determine in this case, be-

cause the respondent paid, without objection, the supposed amount of the taxes from January 4 to June 1, 1896.

The court found the net proceeds of the mine from January 1 to June 1, 1896, were $87,179.34, or less than $100,000. The respondent paid, before suit, $1,750, which would be 17½ mills on $100,000 valuation. The total assessment was 27½ mills on the dollar, but this included 10 mills for special school taxes that respondent claimed were illegally assessed, without any jurisdiction in the assessor whatever to make the assessment. It appears from the record that this 10-mill special school tax, for the Mercur district, was voted by the trustees of the district in direct violation of law, and without following any of the provisions of the statute authorizing such vote or assessment, and without a vote of the taxpayers of the district. Their acts in voting such assessment were without jurisdiction, and were illegal and void. When the statute provides for the levying of a special tax by a school district, and prescribes the manner in which such levy must be made, a compliance with the requirements of the statute is necessary to the validity of the tax, and an injunction will lie to restrain the collection of such illegal tax, assessed without jurisdiction, when it will create a cloud upon the title to real estate. *People* v. *Castro*, 39 Cal. 65; *Bramwell* v. *Guheen* (Idaho), 29 Pac. 110; *People* v. *Seale*, 52 Cal 71; Cooley, Tax'n, pp. 333, 334; Burroughs, Tax'n, p. 396.

It is claimed by the appellants that the levy of the tax, as levied, is simply an irregularity, informality, or over-assessment, and that the court has no jurisdiction by injunction to restrain its collection or set aside the sale, under section 173 of the revenue act. If this contention were correct, we should most certainly agree with appel-

lants' counsel in this respect, but the fact seems to be otherwise. Section 179, p. 465, Laws 1896, provides: " No injunction shall be granted by any court or judge to restrain the collection of any tax or any part thereof, nor to restrain the sale of any property for the nonpayment of the tax, except, first, where the tax, or any part thereof sought to be enjoined is illegal, or is not authorized by law. If the payment of a part of a tax is sought to be enjoined, the other part must be paid or tendered before action can be commenced." The right to restrain the collection of illegal and unauthorized taxes, and taxes levied without jurisdiction, is plainly given by this section. This right to injunction under section 179 is not limited or taken away by section 182, which follows sections 180, 181, both of which sections treat of certain special matters with reference to licenses and the payment of taxes under protest. The limitation of section 182 would properly apply to the two sections that precede it, but not to section 179, which treats of another and different remedy. Suth. St. Const. § 217. While the statute referred to recognizes the right to injunction when the tax, or any part thereof, sought to be enjoined, is illegal, or is not authorized by law, the remedy should not be invoked, except in clear cases, based upon unquestionable facts, coming within the clear terms, letter, and spirit of the statute. All taxes upon the net annual product of the mine, taxable for the year 1896, had been fully paid before the commencement of this action. Taxes upon the net annual product of the mine from June 1, 1896, to June 1, 1897, would be assessable and collectible in the year 1897.

For the reasons given, we are of the opinion that the special school tax of 10 mills on the dollar was illegal, unauthorized by law, and assessed without jurisdiction,

and that the tax levied upon the estimated net proceeds of the mine from June 1 to December 31, 1896, was unauthorized, illegal, and void, because, at the time, of such assessment, there were no net proceeds of the mine for that period of time, known, ascertainable, or in existence, and no assessment could legally be made thereon. *McLean* v. *Jephson* (N. Y. App.), 25 N. E 409; *Armstrong* v. *Ogden City,* 12 Utah 478; *Merrill* v. *Spencer,* 14 Utah 273; *Taylor* v. *Robertson,* 16 Utah ——; *Railway Co.* v. *Standing,* 10 Utah 461; *Dickey* v. *Polk Co.* (Iowa), 12 N. W. 290; *Hubbard* v. *Board,* 23 Iowa 130; *Board of Assessors of Parish of Orleans* v. *Pullman's Palace-Car Co.,* 8 C. C. A. 490; *Taylor Bros. Iron Works Co.* v. *City of New Orleans* (La.), 11 South. 3; *Davis* v. *Burnett* (Tex. Sup.), 13 S. W. 613; *Galveston Co.* v. *Galveston Gas Co.* (Tex. Sup.), 10 S. W. 583; *Morris* v. *Merrell,* 44 Neb. 425; *Gregg* v. *Sanford,* 12 C. C. A. 525.

Further discussion of other questions presented by the record is not deemed necessary for the determination of the case. Upon the whole record we find no error. The judgment and decree of the district court is affirmed.

ZANE, C. J., and BARTCH, J., concur.