**Vickie CARLUCCI, Plaintiff,**

v.

**UTAH STATE INDUSTRIAL COMMISSION and Default Indemnity Fund, Defendants.**

**No. 20386.**

Supreme Court of Utah.

Sept. 12, 1986.

---

**1336**

Arthur F. Sandack, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Ralph L. Finlayson, Salt Lake City, for defendants.

STEWART, Justice:

In 1984, the Utah Legislature created the Default Indemnity Fund to pay workers, or their dependents, workmen's compensation benefits when their employers are unable to pay. U.C.A., 1953, § 35–1–107(1) (Repl. Vol. 4B, 1974 ed., Supp.1985),[1] which became effective March 29, 1984, states that the Fund is

> for the purpose of paying and assuring, to persons entitled to, workers' compensation benefits when an employer becomes insolvent, appoints or has appointed a receiver, or otherwise does not have sufficient funds, insurance, sureties, or other security to cover workers' compensation liabilities under this chapter. If it becomes necessary to pay benefits, the fund will be liable for all obligations of the employer as set forth in Chapters 1 and 2, Title 35.

Lester Carlucci was killed in an industrial accident in the course of his employment with Pour-A-Yard, Inc. on October 7, 1983. He is survived by his wife, Vickie Carlucci, and their three children. Pour-A-Yard carried no workmen's compensation insurance at the time of his death and was in a Chapter 11 bankruptcy proceeding. The case was converted to a Chapter 7 proceeding February 23, 1984.

The issue on appeal is whether Mrs. Carlucci may recover death benefits for her and her children from the Default Indemnity Fund even though her husband died before the Fund was established. The Industrial Commission denied her recovery from the Fund on the ground that the Indemnity Fund could not be held to apply to accidents occurring before the effective date of the statute creating the fund.

Section 35–1–107 became law March 29, 1984, some five months after Mr. Carlucci's death. The Commission and the Fund argue that the plaintiff's rights are governed by the law in effect at the time of the worker's death, when the cause of action arose. Mrs. Carlucci argues that since the statute is remedial in nature, it should be construed broadly to give her a remedy.

■ The general rule is that the law establishing substantive rights and liabilities when a cause of action arises, and not a subsequently enacted statute, governs the resolution of the dispute. *Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976); *Shupe v. Wasatch Electric Co.*, 546 P.2d 896, 898 (Utah 1976); *Okland Con-*

---

1. Section 35–1–107 was amended by the Legislature effective July 1, 1986. The most significant change in terms of this appeal is that the name of the Fund was changed to "Uninsured Employers Fund." Because this case arose, was appealed and argued during the time the Fund was known as the Default Indemnity Fund, we use that name in this opinion.

*struction Co. v. Industrial Commission,* 520 P.2d 208, 210 (Utah 1974); *In re Anthony,* 71 Utah 501, 504, 267 P. 789, 790 (1928); *Mercur Gold Mining & Milling Co. v. Spry,* 16 Utah 222, 229, 52 P. 382, 384 (1898). *See also* § 68–3–3, which states: "No part of these revised statutes is retroactive, unless expressly so declared."

■ There are, however, exceptions to the rule of nonretroactivity. Statutes which are procedural only and do not create, alter, or destroy substantive rights may be applied to causes of action that have accrued or are pending at the time the statute is enacted. In *State Department of Social Services v. Higgs,* 656 P.2d 998, 1000 (Utah 1982), we stated:

> [P]rocedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions as well.

*See also Pilcher v. State Department of Social Services,* 663 P.2d 450, 455 (Utah 1983); *Foil v. Ballinger,* 601 P.2d 144, 151 (Utah 1979); *Petty v. Clark,* 113 Utah 205, 213–14, 192 P.2d 589, 593 (1948); *Industrial Commission v. Agee,* 56 Utah 63, 67–68, 189 P. 414, 415–16 (1920); *Boucofski v. Jacobsen,* 36 Utah 165, 171, 104 P. 117, 119 (1909).

■ The statute creating the Default Indemnity Fund is not a procedural statute. It establishes substantive law that creates a new jural entity with certain rights and liabilities and establishes a new cause of action for workers or their dependents who have been unable to collect their workmen's compensation benefits from employers. Being substantive in nature, the statute cannot be held to apply to this case if Mrs. Carlucci's cause of action arose before the effective date of the statute, and if there is no clear legislative indication that the statute should apply to cases pending when it became effective. *Brunyer v. Salt Lake County,* 551 P.2d at 522; *In re Ingraham's Estate,* 106 Utah 337, 340, 148 P.2d 340, 341 (1944). *See also Pilcher v. State Department of Social Services,* 663

P.2d at 455. There is no evidence of such legislative intent.

The critical issue, therefore, is whether Mrs. Carlucci's claim arose after the enactment of the statute. Mrs. Carlucci's claim against Pour-A-Yard, Inc., for workmen's compensation death benefits is separate and different from the claim that her husband would have had, had he lived. *Halling v. Industrial Commission,* 71 Utah 112, 118, 263 P. 78, 80 (1927). Her cause of action for death benefits arose, not at the time of her husband's accident, but at the time of his death, although in this case both occurred the same day. We have specifically held in the context of workmen's compensation law that it is the law in force at the time of the worker's death that determines a dependent's rights against the employer under the workmen's compensation laws. *Silver King Coalition Mines Co. v. Industrial Commission,* 2 Utah 2d 1, 4, 268 P.2d 689, 691 (1954). As the Court stated in *Silver King,* "[a] statute is not made retroactive merely because it draws on antecedent facts for its operation." *Id.* at 6, 268 P.2d at 692. *See also Cox v. Hart,* 260 U.S. 427, 434, 43 S.Ct. 154, 156, 67 L.Ed. 332 (1922). It was no doubt this body of law that the Commission relied on in denying Mrs. Carlucci's claim against the Indemnity Fund.

■ However, Mrs. Carlucci's cause of action against the Indemnity Fund arose at some time after the date of her husband's death because the Default Indemnity Fund is not liable until such time as the employer becomes unable to discharge his workmen's compensation liability. Section 35–1–107(1) expressly states that liability arises when "an employer becomes insolvent, has appointed a receiver, or otherwise does not have sufficient funds, insurance, sureties, or other security to cover worker's compensation liabilities under this chapter." Thus, a worker, or his dependents, in case of his death, cannot sue the Fund before it is clear that the primary obligor, the employer, cannot pay. It follows that a depend-

ent's right against the Indemnity Fund does not accrue until the primary obligor's inability to pay his liability is established. It is the law in effect at that time that determines Mrs. Carlucci's rights. *Okland Construction Co. v. Industrial Commission,* 520 P.2d at 210.

The next critical question then is whether Mrs. Carlucci's right to a remedy under § 35–1–107 accrued after that section became effective. That issue has not been briefed by the parties to this appeal, and we are not in a position to resolve the issue given this record. For that reason we are obliged to remand this case to the Commission to determine when the claim arose or accrued. Indeed, the Commission's own rules governing when and how a claim may be made against the Fund may make a difference in the outcome. In any event, the Commission, in ruling on the point, should bear in mind the liberal construction that should be accorded the workmen's compensation laws, including the legislation establishing the Default Indemnity Fund, or what now is the Uninsured Employer's Fund.

We are aware that the Legislature did not appropriate any monies with which to fund the Indemnity Fund and that its funds were to be built up from unclaimed worker's compensation death benefits. Accordingly, a claim might be made against a "dry fund," as the Commission argued in denying relief. But that clearly was a possibility the moment the Fund came into existence. How such claims should be handled is not before us, but may, depending on the Commission's ruling as to when Mrs. Carlucci's claim arose, become pertinent. The existence of the bankruptcy proceedings and the date of the order of discharge may also be relevant to the Commission's determination.

Reversed and remanded for further proceedings.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.