**THOMAS A. PAULSEN COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, and Default Indemnity Fund of the Utah Industrial Commission, Respondents.**

No. 21049.

Supreme Court of Utah.

Feb. 9, 1989.

Rehearing Denied March 10, 1989.

Brad L. Englund, Earl D. Tanner, Salt Lake City, for petitioner.

Steven M. Hadley, Susan Pixton, Salt Lake City, for respondents.

ZIMMERMAN, Justice:

Thomas A. Paulsen, dba Thomas A. Paulsen Company ("Paulsen"), petitions for review of an order of the Industrial Commission of Utah ("the Commission") finding Paulsen liable for workers' compensation benefits paid to an injured employee by the Commission's Default Indemnity Fund ("the Fund") and ordering Paulsen to satisfy that liability by making payment to the Fund.[1] Paulsen challenges the order on a number of substantive and procedural grounds. We affirm that portion of the Commission's decision holding Paulsen liable for the employee's benefits but reverse that portion directing Paulsen to make payment directly to the Fund. The Fund will have to seek satisfaction of Paulsen's obligation through proceedings in the district court.

Paulsen's employee suffered an injury to his spine during the construction of a building in April of 1984. The employee sought workers' compensation benefits through the Commission. In October of 1984, a hearing was held on the employee's claim before an administrative law judge ("ALJ"). Both Paulsen and the employee appeared and testified. In January of 1985, the ALJ entered an order, accompanied by findings of fact and conclusions of law ("the original order"), which directed the payment of benefits to the employee.

Although the precise scope of the original order is in dispute, it is clear the ALJ found that the employee was injured in an industrial accident while employed by Paulsen, that Paulsen did not carry insurance coverage for workers' compensation benefits due its employees, that Paulsen was for all practical purposes insolvent and unable to pay the benefits to which the injured employee was entitled, and that the Fund was, by statute, required to step in and compensate the employee.[2] Based on these findings, the ALJ ordered the Fund to pay the employee's medical expenses and his temporary total and permanent partial disability benefits, all totalling approximately $21,000. None of the parties sought review of the original order, and after fifteen days from the date of entry, the order became final and was not subject to review by the Commission or the courts. *See* Utah Code Ann. § 35–1–82.54, –82.55 (Supp.1983).

In the original order, the ALJ did not expressly order Paulsen to pay any of the amount awarded the employee. Approximately eight months after the original order became final, the Fund asked the ALJ to enter an amended order expressly stating that Paulsen was liable for all amounts the Fund had paid the employee and that Paulsen was to pay directly to the Fund all such amounts. The ALJ entered the re-

---

1. In 1986, the Fund was redesignated the "Uninsured Employers' Fund." *See* Utah Code Ann. § 35–1–107 amendment notes (1988); *compare id.* § 35–1–107 (Interim Supp.1984) *with id.* § 35–1–107 (1988). We confine our analysis to the law in effect at the time of the injury and proceedings below, April of 1984 through October of 1985, and therefore refer to the Fund by the name it carried at that time, the Default Indemnity Fund. Further, unless otherwise indicated, all code references are to sections in effect during that time period.

2. As stated in the version of section 35–1–107 in effect at the time in question, the Fund was created

   for the purpose of paying and assuring, to persons entitled to, workers' compensation benefits when an employer becomes insolvent ... or otherwise does not have sufficient funds ... to cover workers' compensation liabilities.... If it becomes necessary to pay benefits, the fund will be liable for all obligations of the employer as set forth....

   Utah Code Ann. § 35–1–107(1) (Interim Supp. 1984).

quested order ("the amended order") in October of 1985. Paulsen unsuccessfully sought review by the Commission and then filed a petition with this Court.

The questions presented can be grouped as two broad legal challenges to the amended order. First, did the ALJ err when he amended the original order to include an express finding that Paulsen was liable to the Fund for the amounts paid the injured employee? Second, did the ALJ err when he ordered Paulsen to pay the amounts due directly to the Fund?

The first issue—the propriety of amending the order to expressly find Paulsen liable to the Fund—subsumes two subsidiary questions: First, as a matter of substantive law, could Paulsen be held liable for the compensation? Second, were the proper procedures followed in entering the amended order finding Paulsen liable?

■ There can be no doubt that Paulsen could be held liable for the compensation paid. If an employee is injured in an accident during the course of employment and the employer is properly insured, the employee's sole means of obtaining redress is through the workers' compensation system. *See* Utah Code Ann. § 35–1–60 (1988). However, when an employer is not insured as required by statute, *see* Utah Code Ann. § 35–1–46 (Supp.1983), the employee has the option of seeking damages from the employer in a civil action brought in the courts or of obtaining a workers'

compensation award from the Commission. *See* Utah Code Ann. §§ 35–1–57, –58, –59 (1988). If the employee elects to proceed through the workers' compensation system and obtains an award, the employer is liable for the amount of that award. *See American Fuel Co. v. Industrial Comm'n,* 55 Utah 483, 484–89, 187 P. 633, 633–35 (1920); Utah Code Ann. § 35–1–58 (1988); *id.* §§ 35–1–45, –81 (Interim Supp. 1984).[3]

■ A number of Utah employers are unable to pay compensation awards entered against them because they are uninsured or underinsured and are lacking in other financial resources. As a result, a number of employees' awards have proven to be uncollectable. In 1984, the legislature acted to remedy this problem by passing the Workers' Compensation Default Indemnity Fund Act. *See* 1984 Utah Laws ch. 77, § 1. The purpose of the legislation was to assure that employees' awards would be paid by the Fund if the employer or the insurer was unable to do so. *See* Utah Code Ann. § 35–1–107(1) (Interim Supp.1984). The Fund was given by subrogation the right to proceed against the employer for all amounts paid to the employee. Utah Code Ann. § 35–1–107(3) (Interim Supp.1984); *see generally* 2A A. Larson, *The Law of Workmen's Compensation* § 67.40 (1988). Here, the ALJ found Paulsen was uninsured.[4] The employee had claimed workers' compensation bene-

---

**3.** As in effect at the time, these sections provided in relevant part:

> *Every employee ... who is injured,* and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, wherever such injury occurred, if the accident was not purposefully self-inflicted, *shall be paid compensation* for loss sustained on account of injury or death, and such amount for medical, nurse, and hospital service and medicines, and, in case of death, such amount of funeral expenses, as provided in this chapter. *The responsibility for compensation and payment of* medical, nursing, and hospital services and medicines, and funeral expenses provided under this chapter *shall be on the employer* and its insurance carrier and not on the employee.

Utah Code Ann. § 35–1–45 (Interim Supp.1984) (emphasis added).

> In addition to the compensation provided for in this chapter *the employer or the insurance carrier shall pay* such reasonable sum for

> medical [and related expenses] as the Industrial Commission considers just.

Utah Code Ann. § 35–1–81 (Interim Supp.1984) (emphasis added).

> Any employee, whose employer has failed to comply with the [insurance requirements] ... may, in lieu of proceeding against his employer by civil action in the courts ..., file his application with the commission for compensation in accordance with the terms of this title, and the commission shall hear and determine such application for compensation as in other cases; *and the amount of compensation* which the commission may ascertain and determine to be due to such injured employee ... *shall be paid by such employer* to the persons entitled thereto within ten days after receiving notice of the amount thereof as so fixed and determined by the commission.

Utah Code Ann. § 35–1–58 (1988) (emphasis added).

**4.** The ALJ did note that Paulsen had made a good faith effort to obtain insurance, but an

fits and received an award. Under the relevant law, Paulsen became primarily responsible for the amount of that award either to the employee, as an initial matter, or to the Fund, to the extent it paid the employee in the employer's stead.

Having concluded that the ALJ could have stated in the original order that Paulsen was liable to the Fund for all amounts it paid the employee, the next question is whether proper procedures were followed in entering the amended order containing that pronouncement. The gist of Paulsen's argument is that even if an express statement of liability to the Fund could have been placed in the original order, it was not. And when no party sought review of that order, it became final and the issue was foreclosed from further consideration. He argues that when that issue was addressed in the amended order some eight months later, it was already beyond the

ALJ's reach. The Fund counters that the original order did include an imperfectly expressed determination of Paulsen's liability; however, because of a clerical error, that determination was not made sufficiently clear so that the Fund could be sure that the original order would be enforceable against Paulsen. The Fund contends that it was entirely proper for the ALJ to correct the clerical error by way of an amended order.

■ The original order could, in truth, have been written more clearly; [5] however, we think that it did effectively settle the issue of Paulsen's liability. Our conclusion is based on a reading of the specific language of the order in light of the legal principles that govern the workers' compensation program. The original order, after specifying the medical expenses the employee had incurred, states, "[T]hese expenses are the responsibility of the employ-

---

insurance agent had absconded with Paulsen's premium and had not arranged for an insurance policy. For our purposes, Paulsen's good faith effort is irrelevant: section 35–1–46 imposes an unconditional obligation on employers to be properly insured, and Paulsen was, in fact, uninsured. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 67.22 (1988).

5. The original order, in relevant part, provided as follows:

### FINDINGS OF FACT
### CONCLUSIONS OF LAW
### AND ORDER

FINDINGS OF FACT:

....

The applicant herein sustained an industrial injury on April 1, 1984 while employed by the defendant, Thomas Paulsen, general contractor....

....

The case was referred to a medical panel for a determination of the permanent partial impairment. The medical panel found that the applicant has sustained a 15% permanent partial impairment of the whole body due to the industrial injury of April 1, 1984. The Administrative Law Judge adopts the findings of the medical panel as his own.

As a result of this injury, the applicant has sustained ... medical expenses ... [totalling] $6,804.49.

These expenses are the responsibility of the employer, since the employer was uninsured for workers' compensation purposes at the time of the industrial injury. However, some mention should be made of the situation surrounding the defendant['s] being uninsured. The file contains information indicating that

... the employer, in good faith made efforts to obtain workers' compensation coverage.... When the applicant tried to make a claim ... he was advised that no policy for insurance had been issued. Rather, it appeared that the insurance agent ... absconded with the employer's funds and did not purchase the coverage.... Upon taking testimony from the employer, it was determined by the Administrative Law Judge that the employer was in no position to pay the medical bills or the compensation benefits due in this matter, for the reason that for all practical purposes the employer is insolvent. Accordingly, the Administrative Law Judge finds that the provisions of Section 35–1–107, regarding the Default Indemnity Fund have been triggered such that [the employee] is entitled to an award from the Default Indemnity Fund for the injuries he has sustained as a result of his industrial injury.

... [T]he applicant ... [is entitled] ... to temporary total disability benefits ... and permanent partial impairment benefits....

CONCLUSIONS OF LAW:

[The employee] is entitled to workers' compensation benefits for the industrial injury he sustained on April 1, 1984, which accident arose out of or during the course of his employment with the defendant, Thomas A. Paulsen, (uninsured).

ORDER:

IT IS THEREFORE ORDERED that the Default Indemnity Fund prepare the necessary vouchers directing the State Treasurer, as Custodian of the Fund, to pay to [the employee] compensation ... as temporary total disability ...; said benefits to be paid in a lump sum.

er." Also, after describing the compensation awarded the employee and noting that Paulsen was insolvent and lacked insurance, the order states, "[T]he employer was in no position to pay the medical bills or the compensation benefits due in this matter." Finally, the order directed the Fund to pay the employee the amount of the award, something the Fund is obliged to do only if the employer is first found responsible and unable to pay. *See Carlucci v. Utah State Indus. Comm'n,* 725 P.2d 1335, 1337 (Utah 1986); Utah Code Ann. § 35–1–107(1) (Interim Supp.1984). These statements, read in light of the underlying law, are sufficient to show that the ALJ did determine that Paulsen was liable and did make that determination sufficiently clear to provide the parties with notice.

██ Having concluded that the original order determined and adequately described Paulsen's liability, the question is whether the ALJ erred in entering the amended clarifying order. A brief explanation of why the clarification was sought should be helpful. Once the Commission enters an order finding an employer liable for benefits and the Fund pays those benefits to the employee, the Fund has a right by subrogation to proceed against the employer for reimbursement. Utah Code Ann. § 35–1–107(3) (Interim Supp.1984). The Fund's usual method of exercising this right is to follow the procedure set forth in section 35–1–59. Under that provision, the Fund may file with the district court an abstract of the Commission order finding the employer liable; once filed, that order is treated as a judgment. *See* Utah Code

Ann. § 35–1–59 (1988).[6] In the present case, the Fund reasoned that absent a clarification, it might encounter some difficulty in docketing the original order as a judgment against Paulsen because the order did not make it entirely clear that Paulsen was liable. As a precaution, it sought the amended order.

In attacking the amended order, Paulsen argues that the Commission lacks the power to make modifications in outstanding final orders, especially substantive changes such as those made in the order at issue. The Fund responds that the Commission has the power to correct clerical errors and that the modification made was clerical, not substantive. We find the Fund's argument persuasive.

██ The initial question is whether the Commission has authority to correct clerical errors in orders. None of our prior cases have addressed this question, and the relevant statutes do not expressly grant the Commission this power, much less spell out the procedures to be followed. However, we find support for such authority in section 35–1–78 of the Code.

Section 35–1–78, as it was worded at the time in question, provides:

The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings, or orders with respect thereto, as in its opinion may be justified.

Utah Code Ann. § 35–1–78 (Supp.1983). We have held that this section gives the Commission broad authority to make sub-

---

IT IS FURTHER ORDERED that the Default Indemnity Fund prepare the necessary vouchers directing the State Treasurer, as Custodian of the Fund, to pay to [the employee] ... compensation for a 15% permanent partial impairment....

IT IS FURTHER ORDERED that the Default Indemnity Fund prepare the necessary vouchers directing the State Treasurer, as Custodian of the Fund, to pay to [the employee] the sum ..., which amount represents the medical expenses incurred by [the employee] as a result of the industrial injury of April 1, 1984; [the employee] is to pay the medical care providers listed in the Findings of Fact of this Order.

IT IS FURTHER ORDERED that any Motion for Review of the foregoing shall be filed in writing within fifteen (15) days from the

date hereof specifying in detail the particular errors and objections and unless so filed this Order shall be final and not subject to review or appeal.

6. That section provides in relevant part:

An abstract of any award may be filed in the office of the clerk of the district court of any county in the state, and must be docketed in the judgment docket of the district court thereof.... When so filed and docketed the award shall constitute a lien ... upon the real property of the employer.... Execution may be issued thereon ... in the same manner and with the same effect as if said award were a judgment of the district court.

Utah Code Ann. § 35–1–59 (1988).

stantive changes in its orders when substantial changes in the circumstances have occurred. *See, e.g., Barber Asphalt Corp. v. Industrial Comm'n,* 103 Utah 371, 380, 382, 135 P.2d 266, 270, 272 (1943); *id.* 103 Utah at 389, 135 P.2d at 275 (Wolfe, C.J., concurring). We see no reason that section 35-1-78 should not also be construed to permit mere clerical changes in the Commission's orders. The overall philosophy governing the interpretation of Utah's workers' compensation statutes is one of liberal construction. *See, e.g., Carlucci v. Industrial Comm'n,* 725 P.2d at 1338. And the legislature has directed that workers' compensation proceedings are not to be burdened with technicalities but are to be conducted so as to protect the substantial rights of the parties within the spirit of the workers' compensation statutes. *Gardner v. Edward Gardner Plumbing & Heating, Inc.,* 693 P.2d 678, 681 (Utah 1984); *see* Utah Code Ann. § 35-1-88 (1988). On the basis of the foregoing, we conclude that the authority of the Commission to correct clerical errors under section 35-1-78 is comparable to that provided to trial courts by Utah Rule of Civil Procedure 60(a), which provides in relevant part:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party....

Utah R.Civ.P. 60(a); *cf. Callihan v. Department of Labor and Indus.,* 10 Wash. App. 153, 156-58, 516 P.2d 1073, 1076 (1973) (discussing similar error-correction authority in that state's workers' compensation system). Cases interpreting rule 60(a) may be referred to in elaborating on the Commission's authority.

The next question is whether the amendment obtained by the Fund was one correcting a clerical error. We think it was. Again, useful analogy may be made to Utah Rule of Civil Procedure 60(a), which addresses the power of trial courts to correct clerical errors. Under that rule, we have drawn a distinction between "clerical errors," which a court may correct, and "judicial errors," which it may not. A clerical error is one made in recording a judgment that results in the entry of a judgment which does not conform to the actual intention of the court. On the other hand, a judicial error is one made in rendering the judgment and results in a substantively incorrect judgment. *See Lindsay v. Atkin,* 680 P.2d 401, 402 (Utah 1984); *Stanger v. Sentinel Sec. Life Ins. Co.,* 669 P.2d 1201, 1206 (Utah 1983); *see also State v. Lorrah,* 761 P.2d 1388, 1389 (Utah 1988) (addressing substantially similar Utah R.Crim.P. 30(b)). As explained above, the original order did reflect a determination that Paulsen was liable. We are persuaded that the ALJ's failure to state this in clearer terms was merely a matter of inadvertence, i.e., a clerical error, and was properly correctable by way of an amended order.[7]

Having found that the amended order expressly stating that Paulsen is liable was properly entered, we must consider Paulsen's final claim, that the Commission erred when it included in the amended order a provision expressly directing Paulsen to reimburse the Fund. Paulsen argues that the Commission has no authority to order an employer to pay such reimbursement directly to the Fund; rather, the Fund's only remedy is through the docketing procedure specified in section 35-1-59. *See* Utah Code Ann. § 35-1-59 (1988).

---

**7.** A final observation must be made with respect to the power to correct clerical errors. In its reply brief, Paulsen has pointed out that the ALJ, at the Fund's request, amended the order without notifying Paulsen or providing an opportunity to respond and that Paulsen may have thus been denied procedural due process. We do not reach this argument regarding the procedures followed because it was not raised in either the motion for review before the Commission or in Paulsen's opening brief before this Court. *See Romrell v. Zions First Nat'l Bank,*

611 P.2d 392, 395 (Utah 1980); *Rekward v. Industrial Comm'n,* 755 P.2d 166, 168 (Utah App. 1988); R.Utah S.Ct. 24(c) (formerly Utah R.App. P. 24(c)). Further, our review of the entire record persuades us that Paulsen has, in fact, had ample opportunity to contest every significant issue in this case. We do observe, however, that section 35-1-78 was recently amended and, as amended, clearly requires that notice and a hearing be provided when an order is amended. Utah Code Ann. § 35-1-78(1) (1988).

The Fund counters that the Commission has such power and relies on section 35–1–107(3). That section provides that to the extent the Fund has paid benefits on behalf of an employer, "by subrogation, [it] has all the rights, powers, and benefits of the employee ... against the employer." Utah Code Ann. § 35–1–107(3) (Interim Supp. 1984). The Fund argues that this provision should be interpreted as authorizing the Commission to enter an order for direct reimbursement because the employee, in whose stead it stands, has the right to have the Commission order the employer to pay benefits directly to the employee.

Although as a matter of policy we find the Fund's argument appealing, the statutes are not susceptible of the interpretation for which the Fund argues. Rather, we conclude that the Fund's sole statutory remedy is to proceed under section 35–1–59 and docket in the district court an abstract of the order determining liability.

We have considered the remaining arguments and find them to be without merit. Paulsen's motion to vacate the amended order in its entirety is denied, and the order is affirmed with respect to that portion which clarifies that Paulsen is liable to the employee, that Paulsen has not paid the employee, that the Fund has paid in Paulsen's stead, and that the Fund is therefore subrogated to the employee's rights against Paulsen. The portion of the order which purports to order Paulsen to pay reimbursement directly to the Fund is vacated. The Fund may now proceed against Paulsen as provided in section 35–1–59.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, Justice (dissenting):

In my view, the Commission has no authority to hold an uninsured employer liable to the Default Indemnity Fund. That liability can only be established in a district court. The Commission's findings of fact and conclusions of law establish that "the employer was in no position to pay the medical bills or the compensation benefits due" the injured worker and that those expenses were the obligation of the employer. The Commission also established that the Default Indemnity Fund was liable to pay to the injured employee the amount of the award. All that is simply a predicate for establishing the Default Indemnity Fund's liability, which the Commission is clearly authorized by statute to do. But the Commission has no power to award the Fund subrogation rights against the uninsured employer or to hold the employer liable to the Fund. Even if that were the Commission's intent, it has no statutory authority whatsoever to do that. The Fund's right of subrogation against the employer ought to be established in a court of law, not by the Commission, and especially not by the so-called correction of a "clerical error."