## ONTARIO SILVER MINING CO. v. HIXON,
### County Treasurer.

No. 2976.   Decided March 26, 1917.   (164 Pac. 498.)

TAXATION—MINING PROPERTY—DRAIN TUNNELS.  A tax assessed upon certain drain tunnels used to drain a mine, under Const. art. 13, Section 4, authorizing taxation of all machinery used in mining and all property upon or appurtenant to mines and mining claims which have a value separate and independent of all such mines or mining claims, was unauthorized where it appeared that the tunnels had no separate and independent value, though used by adjoining mines for a consideration, but that their value was inseparably connected with the operation of the mine.

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Injunction by Ontario Silver Mining Company, a corporation, against J. M. Hixon, County Treasurer, etc.

Judgment for plaintiff.

Defendant appeals.

AFFIRMED.

*P. H. Neeley, Dan B. Shields,* Atty. Gen., *J. H. Wolfe* and *C. C. Dalby,* Asst. Attys. Gen., for appellant.

*Van Cott, Allison & Riter* for respondent.

### APPELLANT'S POINTS.

"All property in the State not exempt under the laws of the United States or under this constitution shall be taxed in proportion to its value as provided by law."   Section 2, Article 13, State Constitution.

"This is an express constitutional provision for the taxation of all property within this State, not exempt under the laws of the United States or this constitution.   Excepting such exemptions there is no limitation as to the subjects of

taxation, or the quality or character of matters and things which are to share in the burden of government. * * * The framers of the constitution * * * evidently intended that no property should be relieved from the burden of taxation, except such as was defined and specified for exemption by that instrument.'' (*Judge* v. *Spencer*, 15 Utah 242; *Parker* v. *Quinn*, 23 Utah 332.)

The use to which the tunnels are put is not to facilitate the extraction and removal of ore. While they are a part of the plaintiff's mine, they have a value which is separate and independent of plaintiff's mine. It is by reason of such separate and independent value that they are separately and independently taxable. Such value was, by the State Board of Equalization, under a well recognized rule of taxation, made the basis of the tax. The tax was not imposed upon the earnings. It was a tax upon property of (''upon'') the plaintiff's mine. The rule is correctly stated by the court in *Hale* v. *Jefferson County*, (Mont.) 101 Pac. 973:

''If it had an independent use yielding independent profit, it should be taxed according to its value for that purpose, and the value for that purpose would be determined by the amount of profit. 'The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property; but rests solely upon the value.' But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated.''

### RESPONDENT'S POINTS.

The tunnels are not taxable as tangible property separate and apart from the mines of which they form a part seems undeniable. They, like the shafts, drifts, winzes, cross-cuts and other openings, are essential parts and parcels of the mines themselves; therefore they are not and cannot be ''appurtenant'' to those mines in any sense. An ''appurtenance'' is a thing belonging to another thing, and is not a part of the principal thing. These tunnels are an incident of property in the mine, not an appurtenance to it. They are in-

separably annexed to the soil and pass with it, "not as an easement nor as an appurtenance, but as a *parcel.*" (*Water Co.* v. *Forbes,* 62 Cal. 182, 184.) All that can be claimed as being embraced in the word "appurtenance" in a conveyance are easements and servitudes necessary to the enjoyment of the land conveyed. (*Snoddy* v. *Bolen,* 24 L. R. A. 507; *Humphreys* v. *McKissock,* 140 U. S. 304, 314.) In the case last cited it is said: "A thing is appurtenant to something else only when it stands in relation of an incident to a principal, and is necessarily connected with the use and enjoyment of the latter."

These tunnels are not easements or servitudes attached to the plaintiff's mine or to the mine of the Daly Mining Company. They are in the soil and form a part of those mines. The mine, as a generic term, is the principal thing, and the tunnels and other openings are a part of the mine itself. Without the tunnels, drifts, cross-cuts and other openings there is no mine in the sense that that word is used in the constitution, notwithstanding the fact that there may be mining claims containing ore and valuable mineral deposits unopened and unexplored. (*Nor. Pac. Ry.* v. *Mjelde* (Mont.), 137 Pac. 386.) If to a "mine" proper there is acquired by the owner the right to use a shaft or drift or tunnel in *ground not owned by it,* for the convenient working of the mine, such a shaft, drift, tunnel or other underground working would necessarily be classed as an easement and an "appurtenance" to the mine. (*Park City Meat Co.* v. *Comstock S. M. Co.,* 36 Utah 145, 152-3.)

FRICK, C. J.

The plaintiff commenced this action in the district court of Summit county to enjoin the defendant, as treasurer of said county, from enforcing the collection of a certain tax assessed and levied upon certain drain tunnels which were constructed and are used to drain plaintiff's metal mine and from selling said tunnels, etc.

The parties appeared in court and agreed upon the facts, which, so far as material, in substance, are as follows: That the plaintiff is the owner and for many years has operated

what is commonly known as the Ontario mine, in Summit County, Utah; that as the mining operations in said mine were extended downward into the earth a large and constantly increasing flow of water was developed in said mine; that to drain said water from said mine and to make it possible to successfully develop and mine the minerals therein a drain tunnel known as drain tunnel No. 1 was commenced in July, 1881, and was completed in July, 1883; that by means of said tunnel the water was drained from said mine at the 600-foot level; that thereafter work was continued on said tunnel and it was extended from time to time so that by the aid of large pumps the water was ultimately drained from said mine through said tunnel down to the 1,300-foot level; that, notwithstanding the construction of said tunnel and the installation of a large Cornish pump at a cost of about $500,000, it was necessary to construct another tunnel known as drain tunnel No. 2, which was completed in October, 1894, and which drained the mine down to the 1,500-foot level; that said tunnels, in addition to draining plaintiff's mine, also directly and indirectly drained the metal mines of the mining companies hereinafter mentioned which operated mines in the vicinity of plaintiff's mine; that the cost of constructing said tunnels within the exterior boundaries of plaintiff's mining properties amounted to the sum of $940,181.15; that in 1894 the plaintiff entered into an agreement with the Daly-West Mining Company whereby said last-named company was given the privilege of using said drain tunnel No. 1 for the purpose of transporting to the surface the ores in its mine by paying a royalty to the plaintiff of fifteen cents per ton, and plaintiff also granted said Daly-West Mining Company the right to drain its mine through drain tunnel No. 2, and to transport its ores through the same; that for the latter use said Daly-West Mining Company paid plaintiff the sum of $750 per month, together with ten cents a ton for concentrating ores and fifteen cents a ton for all other ores; that similar agreements were entered into with the Daly-Judge Mining Company and the Thompson-Quincy Mining Company, whose mines were also being drained by means of said drain tunnel No. 2; that the three foregoing agreements were all

made for the purpose of ·facilitating the mining operations of the Daly-West, the Daly-Judge, and the Thompson-Quincy Companies, both by furnishing suitable easements for the working of the mines and transportation of ores and supplies, but more important for the drainage of the said property without which the cost of mining (and perhaps the practicability) would increase almost to the point of prohibiting mining operations therein; that the said tunnel No. 2 has at all times since its construction been used exclusively for the drainage of said several mines, and no ore, waste, supplies, or other material has ever been transported through it; that the land at and surrounding the portals of said tunnels and through which they are constructed throughout their entire length consists of mining claims and grounds for which the United States has issued patents as such, and the whole of said land so patented is, and has been during the existence of said tunnel, and now is owned and in the possession of the said mining companies; that said tunnels are used only for mining purposes as before stated, and are not, and have not been, used for any other than mining purposes; that said tunnels were assessed at the valuation of $63,833, that for the year 1913 plaintiff received for the use of said tunnels from said mining companies for the uses aforesaid the sum of $14,758.92, and for the year 1914 the sum of $21,328.51; that the tax levied on said tunnels, and which is sought to be restrained in this action, amounts to the sum of $2,163.93; that the plaintiff has refused to pay said tax upon the ground that the same is illegal, and the defendant has advertised said tunnels for sale, and, unless restrained, will sell the same under the statute authorizing the sale of property for delinquent taxes.

We have omitted all formal parts and all other surplus matter from the foregoing statement of facts. Upon substantially the foregoing facts, and upon the constitutional provision hereinafter stated, the court found for the plaintiff and made conclusions of law declaring said tax illegal and void, and entered judgment permanently enjoining the defendant from collecting said tax and from selling said drain tunnels.

The defendant appeals, and insists that the district court

erred in declaring said tax illegal and void and in entering judgment as stated.

The tax in question was assessed and levied pursuant to article 13, section 4, of our Constitution, which reads as follows:

"All mines and mining claims, both place and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all the machinery used in mining, *and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims,* and the net annual proceeds of all mines and mining claims, shall be taxed" by the state board of equalization. (Italics ours.)

The tax must therefore be sustained, if sustained at all, by the provisions of the section we have just quoted.

The Attorney General and his assistants, who appeared for defendant in this court, contend that the tax in question is legal, and that it is based on and sustained by that portion of the section which we have italicized and to which we refer without repeating it here. Counsel for the defendant further insist that the two tunnels in question are property, that they are appurtenant to plaintiff's mine and that they "have a value separate and independent" from its mine. While no case precisely in point has been found, yet both sides cite and apparently rely upon the case of *Hale* v. *County of Jefferson*, 39 Mont. 137, 101 Pac. 973, in which case a constitutional provision identically like ours was under consideration. In that case a ditch which was used to convey water to a placer mine and by means of which the placer mine was being worked was assessed for taxation, and the owner of the mine and the ditch brought an action to enjoin the imposi-

tion of the tax.  It was stipulated in that case that the ditch there in question, which was a number of miles in length, was used for the sole purpose of conveying water to the placer mine, and that the same had never been used for, any other purpose, and the owner had never derived any benefits or revenue therefrom, except such benefits as he derived from the use of the water in working the placer mine.  It was conceded, however, that the owner of the ditch could sell the water for beneficial uses for other purposes, and that for said purposes the ditch would be valuable.  The Supreme Court of Montana held that the ditch there in question did not constitute property having a value "Separate and independent" from the placer mine within the purview of the provision which we have italicized above.  Plaintiff's counsel contend that the Montana case is not distinguishable in principle from the case at bar.  Upon the other hand, counsel for the defendant insist that the case at bar is distinguishable from the Montana case for the reason, as we have seen, that the plaintiff has derived and is deriving some revenue from the tunnels in question.  A careful reading of the aforesaid constitutional provision will, we think, disclose that the mere fact that the owner of the mine may derive some revenue or other benefit from some particular property is not conclusive upon the question as to whether it is assessable for taxation as separate and independent property.  No mining property, regardless of where it is situated, is assessable unless it has "a value separate and independent" from the mine.  Now, whether any property or any improvement has a separate and independent value from the mine must depend, somewhat at least, upon the use to which such property or improvement is devoted by the mine owner.  This is clearly illustrated by the decision in the Hale case, *supra*.  It was stipulated in that case that the property had never been used for any other purpose than to convey water to the placer mine.  In the case at bar it is stipulated that the tunnels in question never had been used, and at the commencement of this action were not being used, except for the purposes stipulated—that is, for mining purposes.  Now, what value had those tunnels separate and independent from the plaintiff's mine?  The moment the mine

is permanently shut down or ceases to be operated the tunnels are of no practical value whatever. Upon the other hand, if the tunnels are closed the accumulating water prevents all further progress in the mine. Whatever value the tunnels possess, therefore, is inseparably connected with the operation of the mine. Again, it is very clear that plaintiff's mine cannot be operated without the aid of the tunnels. How can it successfully be maintained, therefore, that the tunnels in question have a separate and independent value from the mine? Were it not for the fact that the two tunnels can be used to drain mines which are adjacent to plaintiff's mine, and that they can also be used to transport to the surface ores that are mined in those mines, no one, we think, would have ventured the assertion that those tunnels have a value separate and independent from plaintiff's mine. Under the constitutional provision mining property, in order to be assessable, must possess value which is not only separate from, but independent of, the mine. It is quite clear that the two tunnels have no such value. Whatever value they have is connected with and in fact is an integral part of the mine itself. Just as much so as any shaft which descends into the earth or an underground incline, tunnel, or drift would be which was used in connection with the mine. The mere fact, therefore, that the plaintiff's neighbors who are engaged in the business of mining the ores from adjoining mines are willing to pay something for the use of the tunnels through which the working of their mines is made possible cannot change the nature of the property in the two tunnels so as to make it subject to taxation under the constitutional provision aforesaid. Again, if the matter be viewed entirely from the standpoint of economics, neither the state nor any of its subdivisions are prejudiced by the foregoing construction. From the stipulation it is made quite clear that neither the plaintiff's nor any of the other adjacent mines can be successfully worked or operated if the drain tunnels were closed. If the mines were shut down the state would thus necessarily lose all revenues it now derives from that source, and it is clear from the arguments presented by defendant's counsel that, if the plaintiff limited the use of the tunnels to the drain-

age of its mine, under the constitutional provision, the tunnels would have no separate and independent value which could be assessed for taxation. If the tunnels are taxable, therefore, it is entirely because that, by means of their existence, it is made possible to operate and to develop the mines adjacent to plaintiff's mine. To do that redounds to the benefit of the state at large and to the adjacent mine owners perhaps in a greater degree than it does to plaintiff's benefit. If any one should be taxed, therefore, it should be the adjacent mine owners, but that cannot be done under the constitutional provision, even though they owned the tunnels, because, so far as they are concerned, the tunnels would have no value except in connection with their mines.

We do not wish to be understood by what we have said that, merely because certain property is necessary to operate the mine, for that reason alone it may not be assessed as possessing a separate and independent value. Whether any specific property may or may not be assessed as having a separate and independent value can be best determined when the facts are presented for decision. It is sufficient now to hold that the tunnels in question are not assessable as having a separate and independent value under our Constitution.

We are of the opinion, therefore, that the two tunnels in question are not assessable for taxation. Any other conclusion would result in the taxation of any shaft, tunnel, or incline in any mine which the mine owner might permit another mine owner to use, in order to work the latter's mine. Moreover, we think, it was not contemplated by the constitutional provision aforesaid that any of the underground tunnels, drifts, or inclines of any mine which are used in connection with the mine, and which are necessary to successfully operate the mine, like the tunnels in question, should be taxed as separate and independent property.

The judgment is therefore affirmed, with costs to respondent.

McCARTY and CORFMAN, JJ., concur.