### MAMMOTH MINING CO. v. JUAB COUNTY.

No. 3090.  Decided January 15, 1918.  (170 Pac. 78.)

TAXATION—MINES—"NET ANNUAL PROCEEDS."  Under Const. art. 13, section 4, and Comp. Laws 1907, sections 2566-2568, as amended by Laws 1909, c. 63, relating to taxing of net annual proceeds of mines, where ore, thrown in the dump during previous years, is shipped and reduced, the net to be taxed is the gross received less the cost of handling for the particular year for which taxed, and the mining company cannot be credited with the cost of mining it and placing it in the dump in prior years, the question not being whether the business as a whole was paying, but what was the net proceeds for that particular year, arrived at by subtracting from the gross receipts for the year the amount of expenses actually incurred during such year.[1]

Appeal from District Court of Juab County, Fifth District; *Hon. Joshua Greenwood,* Judge.

---

[1] *Mercur Min. Co.* v. *Spry,* 16 Utah 222, 52 Pac. 382.

Action by the Mammoth Mining Company against Juab County to recover taxes paid under protest.

Judgment for plaintiff.    Defendant appeals.

REVERSED and dismissed.

*Dan B. Shields, Atty. Gen.*, and *J. H. Wolfe* and *O. C. Dalby*, Asst. Attys. Gen., for appellant.

*Dey, Hoppaugh & Fabian* for respondent.

FRICK, C. J.

The plaintiff, hereafter called respondent, commenced this action against the defendant, Juab County, hereafter styled appellant, to recover the sum of $1,771.77, which respondent alleged it had paid as taxes to the appellant under protest upon an assessment of alleged net proceeds derived from its mining property situate in said county ·for the year 1913. The complaint alleged that said taxes were imposed and collected without authority of law, and respondent sought to recover the same from the appellant pursuant to the statute authorizing the recovery of unlawful taxes paid under protest.    The appellant, while admitting that the amount as aforesaid was paid by respondent as taxes for the purposes stated, denied that the taxes were unlawfully imposed or collected, and averred that said taxes were lawful, etc.

·The case was tried to the court, which found that the respondent did not derive any net proceeds for the year 1913, and found as a conclusion of law that the tax in question was void, and judgment was entered in favor of the respondent for the ·amount aforesaid, and for costs.    The appeal is from the judgment.

The principal assignments of error relate to the correctness of the court's findings, conclusions of law, and judgment.

The questions involved on this appeal must be determined from a consideration of the provisions of our Constitution and

statutes relating to the assessment and taxation of the net proceeds derived from mines.

Our Constitution (article 13, section 4) reads as follows: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims, and the net annual proceeds of all mines and mining claims, shall be taxed as provided by law."

This court, in *Mercur Min. Co.* v. *Spry*, 16 Utah, 222, 52 Pac. 382, held that the foregoing provisions were not self-executing. Laws have been enacted and amended from time to time supplementing the constitutional provisions aforesaid.

Comp. Laws 1907, section 2566, as amended by chapter 63, Laws Utah 1909, in substance provides that all persons engaged in mining must at a specified time in each year make certain statements under oath to the state board of equalization showing both the gross and the net yield from their mines for the preceding year.

Section 2567 reads as follows:

"The statement mentioned in the preceding section must contain a true and correct account of the actual expenditures of money and labor in extracting the ore or mineral from the mine, transporting the same to the mill or reduction works, and the reduction of the ore and the conversion of the same into money, or its equivalent, during the year."

Section 2568 provides:

"In making the statement of the expenditures mentioned in the preceding section there must be allowed all money expended for necessary labor, machinery, and supplies needed and used in the mining operations, for improvements necessary in and about the workings of the mine, for reducing the ore, for the construction of mills and reduction works used and operated in connection with the mine, for transporting the ore and for extracting the metals and minerals therefrom; but the money invested in the mines or improvements during any year except the year immediately preceding such statement must not be included therein. Such expenditures do not include the salaries or any portion thereof of any person or officers not actually engaged in the working of the mine, or personally superintending the management thereof."

It will be observed that in section 2567, supra, the expenses that are permitted to be deducted from the gross yield are such only as were incurred "during the year"; that is, during the year for which the proceeds are taxed.

Again, in section 2568, it is expressly provided that:

"The money invested in the mines or improvements during any year except the year immediately preceding such statement must not be included therein."

The statute leaves no room for construction respecting the time during which the expenses may be deducted from the gross yield of any mine in order to arrive at the net proceeds that are subject to assessment and taxation for any particular year.

Let us now apply the foregoing provisions of law to the undisputed evidence in this case. The record shows that during the period from 1876 to 1890 the respondent in operating its mine developed certain ores which were then of too low a grade to be profitably shipped and reduced. Those ores from year to year were placed in a dump, and in 1913, when cheaper processes of reducing ores had been discovered, they then could be and were shipped and reduced at a profit, as hereinafter stated.

Respondent concedes that during the year 1913 it shipped ores from the dump aforesaid which yielded the sum of $62,226.61, and that the expenses of loading, handling, shipping, and reducing said ores amounted to the sum of $23,098.51, which left a net balance of $39,128.10. Respondent also conceded that it had obtained net proceeds from another source which were derived from its mining operations during the year 1913 amounting to the sum of $6,809.93, which, when added to the $39,128.10, increased the net proceeds for that year to the sum of $45,938.03. From that amount the state board of equalization, for reasons not important here, deducted the sum of $2,723.45, which left net proceeds for the year 1913, derived as aforesaid, subject to assessment and taxation, amounting to the sum of $43,214.58, which sum was accordingly assessed, and upon which the taxes imposed and collected by appellant amounted to the sum of $1,771.77, which is the amount in controversy, plus legal interest.

The respondent in the court below contended, and now insists, that if it were allowed the cost of mining the low-grade ores aforesaid and placing them in the dump during the period from 1870 to 1890, such costs and expenses would more than counterbalance the apparent profit it received from the ores in 1913, and hence there would be no net proceeds to be assessed for that year.

The district court permitted the respondent to make estimates and to prove the cost of mining and placing said ores in the dump during the period of time aforesaid, and found that such cost at least equaled, if it did not exceed, the sum of $43,214.58, the amount on which the assessment was made and the taxes computed for the year 1913, and as a conclusion of law found that there were no net proceeds for that year, and that therefore the tax in question was unlawful, and entered judgment accordingly.

In our judgment, the district court committed error in permitting the respondent to deduct any costs or expenses that were incurred in any year except the year specified in the statute. It is too manifest to require argument that under the

statute, for the purpose of taxing the net proceeds of mines, the cost of mining, etc., incurred in any one year must be considered independently from the cost, etc., incurred in any other year; that is, only such costs as are incurred during the year in which the net proceeds are obtained may be considered. As to that the statute is clear and explicit. To illustrate: If A. during a period of four years works his mine and expends $50,000 each year in developing and blocking out ores, but does not ship or reduce any of them during that period, he has incurred an expense of $200,000. If now in the fifth year he ships ores from those he has developed and blocked out the gross yield of which is $100,000, and the cost of reducing and shipping them for that year is $50,000, his net proceeds subject to assessment and taxation for the fifth year will be $50,000. From that conclusion there is—there can be—no escape.

The statute does not concern itself with costs or deficits that arose in any year, except those incurred during the year in which the net proceeds are obtained. It is not a question of whether the mine owner or operator gains net proceeds or net profits from his mine when considered as a business venture, but the only question is: Did the mine or mining properties yield net proceeds for the particular year in which they are assessed? Nor does it make any difference whether the ores are obtained from the mine or from a dump, if in fact they were at some time taken from the mine. If, however, the view taken by the district court in this case should prevail, A. may deduct all the expenses incurred during the four years development, and there will be, as a matter of course, no net proceeds to be assessed and taxed until the entire proceeds derived from the mine exceed the expenses incurred by A. Such is neither the spirit nor the letter of either the Constitution or the statute. A person operating a mine may lose money for a period of years, but, if there be one year in which the yield of the mine exceeds the deductions allowed by the statute, the excess is subject to assessment and taxation as net proceeds for that year.

Counsel for respondent insists that, in view that the Con-

stitution limits taxation to the net proceeds derived from mines, unless there are proceeds in excess of the cost of producing them, there are no net proceeds in fact. Counsel overlook the language as well as the spirit of the Constitution. The language is that the ''annual'' net proceeds shall be taxed, and not the net proceeds that may be derived from the mining venture when considered as a whole. Moreover, the Constitution provides that the same shall be ''taxed as provided by law.'' When, therefore, the statute is construed in the light of the constitutional provisions, there remains no reasonable doubt respecting the unsoundness of the conclusions ,of law and judgment of the district court.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Juab County, with directions to dismiss the complaint at respondent's costs; appellant to recover costs in this court.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.