# TINTIC STANDARD MINING CO. v. UTAH COUNTY
## et al.

No. 5214.   Decided October 22, 1932.   (15 P. [2d] 633.)

*Dan B. Shields* and *Vernon Snyder,* both of Salt Lake City, for appellant.

*Geo. P. Parker,* Attorney General, and *A. L. Booth, Geo. S. Ballif,* and *I. E. Brockbank,* all of Provo, for respondents.

FOLLAND, J.

This action was brought by plaintiff to recover a portion of its 1925 tax on the net proceeds of its mine paid under protest to the county treasurer of Utah county. After a hearing, the court sustained a motion for nonsuit and entered judgment of dismissal of the cause. From this judgment plaintiff appeals.

The basis of appellant's complaint is that certain expenditures made by it in 1925, and which it insists it was entitled lawfully to have deducted from its gross proceeds in computing the net annual proceeds of the mine, were not allowed by the board of equalization. These items are the salaries paid to its general manager, who was also president, treasurer, and director of the corporation, and assistant general manager, who was also a director, in the total sum of $39,000, and money paid by it for the purchase of two mine shafts and other underground workings in the mining ground of the Iron Blossom Mining Company amounting to $206,294.01.

The deduction of the amount paid as salaries of the general manager and assistant manager was refused by the state board of equalization because of the provisions of the statute. Comp. Laws Utah 1917, §5864, as amended by

Laws Utah 1919, c. 114, p. 319, defines the phrase "net annual proceeds" as follows:

"The words 'net annual proceeds' of a metalliferous mine or mining claim as used in this Section are defined to be the net proceeds realized during the preceding calendar year from the sale, or conversion into money, or its equivalent, of all ores from such mine or mining claim extracted by the owner or lessee, contractor or other person working upon or operating the property, during or previous to the year for which the assessment is made, including all dumps and tailing, after making the following and no other deductions from the gross proceeds thereof:

"(a) The amount of money actually expended during the year for labor, tools, appliances, and supplies used in the mining operations, including the labor of the lessee and his employees and the amount expended by the lessee for tools, appliances, and supplies, used by him in his mining operation; provided, that the personal labor of lessees shall be computed at the prevailing wage.

"(b) The actual and necessary office and clerical expenses and salaries of employees, other than corporate officers, within the State.

"(c) The actual cost of the installation, construction, maintenance, and repair of machinery and improvements made during the year in and about the workings of the mine for use in extracting the ores.

"(d) The actual cost of reduction works and mills, and improvements thereof, constructed during the year and operated in connection with the mine.

"(e) The actual cost of the transportation of the ore from the mine to the market or reduction works.

"(f) The actual cost of sampling, assaying, reducing and smelting the ore and extracting the metals and minerals therefrom.

"(g) The amount paid for State and local taxes during the year.

"(h) The amount paid for compensation insurance, or in lieu of such compensation insurance, for compensation of injured employees and the compensation paid to dependents of killed employees, required to be paid under the workmen's compensation laws of Utah.

"Money expended during any year except the calendar year for which the deduction is made shall not be included in the deductions to be made in arriving at net proceeds. The salaries, or any portion thereof, of corporate officers shall not be included as a deduction in arriving at the 'net proceeds' herein defined."

Comp. Laws Utah 1917, § 5929, as amended by Laws Utah 1919, c. 114, requires a statement to be filed with the

state board of equalization by the person, corporation, or association engaged in mining, showing the gross yield of the mine, and, after making certain deductions, the resulting net proceeds. Comp. Laws Utah 1917, § 3931, as amended by Laws of Utah 1919, c. 114, specifies what must be allowed in the statement as deductions for expenditures, and provides, so far as applicable to the present litigation, as follows:

"For necessary clerical and office expenses and salaries of employees. * * * Such expenditure shall not include the salaries, or any portion thereof, of any corporate officer of the mining company, nor of any officer or employee not residing in the State."

These statutes are claimed by appellant to be unconstitutional and void as in conflict with the provisions of section 4, article 13, of the Constiution of this state as amended in November of 1918.

Prior to the adoption of the Constitution in 1896, no provision was made for the taxing of the net proceeds of a mine. Section 4, article 13, of the Constitution as originally adopted, is as follows:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal, or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim is used for other than mining purposes, and has a separate and independent value for such other purposes; in which case said surface ground, or any part thereof, so used for other than mining purposes shall be taxed at its value for such other purposes, as provided by law; and all the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims, and the net annual proceeds of all mines and mining claims, shall be taxed as provided by law."

This section was amended in 1908 by changing the last phrase "shall be taxed as provided by law" so as to read "shall be taxed by the state board of equalization." This

section was again amended in November of 1918, the provisions of which were in force at the time this litigation arose. The amendment adopted at that time is as follows:

"All metalliferous mines or mining claims, both placer and rock in place shall be assessed at $5.00 per acre, and in addition thereto at a value based on some multiple or sub-multiple of the net annual proceeds thereof. All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be assessed at their full value. All machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims, and the value of any surface use made of mining claims, or mining property for other than mining purposes, shall be assessed at full value. The state board of equalization shall assess and tax all property herein enumerated, provided that the assessment of $5.00 per acre and the assessment of the value of any use other than for mining purposes shall be made as provided by law.".

Section 4 of article 13 was again amended in 1932, but that amendment has no bearing on the question before us. The state Legislature at its first session after the adoption of the Constitution enacted provisions for the assessment of the net annual proceeds of all mines and mining claims to be taxed as other personal property, and specified the deductions which should be allowed in the ascertainment of net annual proceeds. These provisions of the statute so far as applicable are as follows:

"Sec. 63. The statement mentioned in the preceding section must contain a true and correct acount of the actual expenditures of money and labor in and about extracting the ore or mineral from the mine and transporting the same to the mill or reduction works, and the reduction of the ore and the conversion of the same into money, or its equivalent, during the year.

"Sec. 64. In making the statement of the expenditures mentioned in the preceding section there must be allowed all moneys expended for necessary labor, machinery and supplies needed and used in the mining operations for improvements necessary in and about the workings of the mine for reducing the ore, for the construction of mills and reduction works used and operated in connection with the mine, for transporting the ore and for extracting the metals and minerals therefrom; but the money invested in the mines or improvements dur-

ing any year except the year immediately preceding such statement must not be included therein. Such expenditures do not include the salaries or any portion thereof of any person or officers not actually engaged in the working of the mine, or personally superintending the management thereof." Laws Utah 1896, sections 63 and 64, p. 442.

A case involving the construction and application of the constitutional provision and the statutes enacted in pursuance thereof came to the Supreme Court in 1898, in *Mercur Gold Mining & Milling Co.* v. *Spry,* 16 Utah 222, 52 P. 382, 384. It was there decided that the provision of the Constitution with respect to the assessment of the net proceeds of mines was not self-enacting, but required legislation to make it effective, and that no tax could be collected on the net proceeds of a mine for any period prior to the effective date of the statute. In the course of the decision, the court defined the term "net proceeds of mines" as follows:

"By the term 'net annual proceeds of the mine' is meant what is annually realized from the product of the mine, over and above all the costs and expenses of obtaining such proceeds and converting the same into money. This construction was afterwards prescribed by section 64, p. 442, of the revenue laws of 1896. The effect of this provision of the constitution was, not to presently tax the annual product of the mines, but to declare that such product should be taxed as provided by law. * * *

"Section 4, art. 13, of the constitution, requires that all net annual products of all mines and mining claims shall be taxed as provided by law. This is a limitation on the power of the legislature, so that, so far as the product is concerned, nothing can be taxed except the net annual product of the mine. The legislature doubtless had this limitation in mind when sections 62-65 were enacted. How the net proceeds shall be ascertained, the time for which net proceeds shall be taxed, etc., are clearly set forth in these sections of the statute, and only that which exists and has been ascertained as the annual net proceeds of the mine is to be assessed and taxed."

The definition above given has been followed by the federal court in *Salt Lake County* v. *Utah Copper Company* (C. C. A.) 294 F. 199.

Appellant states its position as follows:

"It is the contention of the appellate that the legislature was without power or authority under the constitution (the amendment of 1918) to enact that portion of the law with relation to the determination of net annual proceeds, known as chapter 114, Laws of Utah, 1919, because under the constitutional authority the only thing delegated to it was and is the determination of the multiple or submultiple by which the net proceeds are to be multiplied in order to arrive at the valuation for taxation purposes."

We are unable to agree with this contention. An enactment of the Legislature cannot be lightly set aside. Courts will not declare a statute unconstitutional unless it clearly and manifestly violates some constitutional provision. Every presumption will be indulged in favor of the constitutionality of an act and every reasonable doubt resolved in favor of validity. If by any fair interpretation of the statute the Legislature can be upheld, it is the duty of courts to sustain it. *State* v. *Packer Corporation,* 77 Utah 500, 297 P. 1013; *Utah State Fair Association* v. *Green,* 68 Utah 251, 249 P. 1016; 6 R. C. L. 97. The test of the validity of an act regularly passed by the state Legislature is whether or not it violates limitations imposed by the Constitution either in express words or by clear implication. 12 C. J. 749. In matters of taxation, the Legislature possesses plenary power except as such power may be limited by the Constitution. It is not necessary that we look to the Constitution for a grant of power to the Legislature, but it is sufficient if there is no prohibition in express words or by clear implication against what the Legislature has attempted to do. *Achenbach* v. *Kincaid,* 25 Idaho 768, 140 P. 529; 2 Cooley's Constitutional Limitations (8th Ed.) 986; 1 Cooley's Constitutional Limitations, 175. These principles are fundamental.

At the time of the adoption of the 1918 amendment, the statute of 1896 with slight amendments, not important here, was still in full force and effect. There was nothing in the

constitutional amendment inconsistent or in conflict with the statute except only the provision as to the multiple or sub-multiple, and as to that additional legislation was authorized and required in order to fix the multiple or sub-multiple to be used as the basis of assessment. We think it cannot be successfully urged that the amendment of 1918 repealed or made ineffective the statutory provision with respect to the method by which the net proceeds of a mine were to be ascertained. These statutory provisions had been necessary in order to put the full force and effect of the original constitutional provision in operation, and were no less necessary after the adoption of the 1918 amendment in order to direct the state board of equalization in the ascertainment of the net annual proceeds. The Constitution indicated general principles in specifying what the method of assessment should be, but did not lay down rules by means of which those principles became effective. This was left to the Legislature. There is a limitation in the Constitution to the effect that all metalliferous mines or mining claims can be assessed only on the basis of a value, in addition to $5 an acre, to be determined by multiplying the amount of the net annual proceeds by some multiple or sub-multiple to be fixed by the Legislature. This necessarily limits the legislative power to an assessment of mines and mining claims as provided in the Constitution. There is no express limitation to prevent the Legislature from making the Constitution effective by providing the method by which the assessment may be made as applied to the basis specified in the Constitution. When the 1918 constitutional amendment was adopted, the words "net annual proceeds" had attained a definite and well-understood meaning, as including "what is annually realized from the product of the mine, over and above all the costs and expenses of obtaining such proceeds and converting the same into money." This meaning had been impressed on the words by the legislative enactment of 1896, by judicial construction in 1898 in the case of *Mercur Gold Mining &*

*Milling Co.* v. *Spry,* supra, and by actual use and application by the taxing officials of the state during a period of twenty-two years. We must look to the statutory enactment of 1919 to see whether or not the Legislature has attempted to assess more than the net proceeds of mines as that term was understood by the people who adopted the 1918 amendment to the Constitution, or has otherwise transcended its power with respect to this subject. The act of 1919, which we have quoted above, gave effect to the constitutional provision by providing that the multiple to be used shall be the number 3, so that metalliferous mines are now assessed on a valuation fixed at three times their net annual proceeds. The statute defined the term "net annual proceeds" and specified the expenditures which could be used as deductions from gross proceeds in order to ascertain the net proceeds. A careful comparison of the statute of 1919 with the statute in force at the time of the adoption of the 1918 amendment to the Constitution will show that, properly construed, its provisions are in harmony with the former statute and also in harmony with the definition of the term expressed in the decision of this court in *Mercur Gold Mining & Milling Co.* v. *Spry,* supra. Some deductions are authorized which were not mentioned in the former statute, as, for instance, the amount paid for state and local taxes during the year, and the amount paid for compensation insurance, or the amounts paid directly to injured employees or the dependents of killed employees required to be paid under the Workmen's Compensation Act. Different language is used in specifying what deduction may be made of salaries paid to officers of a mining corporation. It is with this last subject that we are now concerned. The statute effective in 1918 (Comp. Laws 1917, § 5931) allowed deductions for necessary expenditures and salaries of officers as follows:

"Such expenditures shall not include the salaries or any portion thereof of any person or officers not actually engaged in the work of the mine, or personally superintending the management thereof."

The statute of 1919, expressed a similar idea in different words, wherein it provided, section 5864:

"(b) The actual and necessary office and clerical expenses and salaries of employees, other than corporate officers, within the State."

Again, in section 5931, referring to deductions, the statute reiterated the words "for necessary clerical and office expenses and salaries of employees, other than corporate officers, within the State," and added, "such expenditure shall not include the salaries, or any portion thereof, of any corporate officer of the mining company, nor of any officer or employee not residing in the State." The language of the 1919 act is susceptible of two constructions: One, that no money paid as compensation or salary to a corporate officer is an allowable deduction; and the other, that only such salary or compensation as is paid to a corporate officer, as such, is excluded from deduction. The rule applicable to the construction of statutes is that, where an act is fairly susceptible of two constructions, one of which will uphold the validity of the act, while the other will render it unconstitutional, the construction which will sustain the constitutionality of the law must be adopted. 25 R. C. L. 1000. So far as applicable to salaries which might not be allowed as a deduction, the well-understood definition of the phrase "net proceeds of mines" in 1918 excluded only salaries of officers not actually engaged in the working of the mine or personally superintending the management thereof. If the language of the 1919 act be construed in harmony with this definition, it would exclude from deductions any salary or part of any salary of a corporate officer paid to him as such corporate officer as distinguished from any salary or compensation paid him for services, by whatever name called, in the working of the mine or in personally superintending the management thereof. If this construction be given, there will be no inconsistency or incompatability, and the latter act will be in complete harmony with the commonly accepted and well-

established definition of the term "net proceeds" at the time of the adoption of the constitutional provision. We are restricted to this definition because of another canon of constitutional construction that terms used in a Constitution must be taken to mean what they meant to the minds of the voters of the state when the provision was adopted. 6 R. C. L. 63, 64; *State* v. *Roberts*, 56 Utah 136, 190 P. 351; *State* v. *St. Louis S. W. R. Co.* (Tex. Civ. App.) 197 S. W. 1006. Where language used in a Constitution has at the time of its adoption a settled meaning, such construction becomes a part of the Constitution which is beyond the power of the Legislature to change. The Legislature cannot give the constitutional language a meaning that is contrary to its terms. *Powell* v. *State*, 17 Tex. App. 345; *State ex rel. Dawson* v. *Falkenhainer*, 321 Mo. 1042, 15 S. W. (2d) 342. "Where a constitution is revised or amended * * * if the new instrument reenacts in the same words provisions which it supersedes it is a reasonable presumption that the purpose was not to change the law in those particulars but to continue it in uninterrupted operation." 1 Cooley's Constitutional Limitations (8th Ed.) 135; *State* v. *Roberts*, 56 Utah 136, 190 P. 351. The net proceeds of mines had been taxed in this state since statehood. We think a fair interpretation of the purposes sought to be attained by the adoption of the 1918 amendment was to continue the same methods of determination of net annual proceeds, but to permit an increase in the assessed value of the mine for taxation purposes by the use of a multiple to multiply the amount of net proceeds instead of continuing the practice then in vogue of levying the tax upon merely the net proceeds for the year.

Much is said in the briefs as to how the words "corporate officers" shall be defined. Respondent contends that the general manager and assistant general manager are corporate officers, while appellant contends they are not. We think it unnecessary to define these terms other than to say that as used in the statute the words "corporate officers"

must be construed with reference to the evident purpose of the law to allow deductions of the compensation paid employees and officers actually working in the mine or personally superintending the management thereof, but as not allowing deductions for salaries of officers performing duties relating to the corporation as such. Obviously officers such as president, secretary, treasurer, and director are corporate officers. Salaries received by such officers for duties performed by them as such officers are not allowable deductions. The board of equalization for the year 1925 allowed a deduction of one-half of the general manager's salary, and refused to allow deduction of the other half. Not anything is made to appear in the record as to the reasons which actuated the board in allowing this deduction, but it occurs to us that the board probably concluded that half the manager's time was devoted to strictly corporate affairs, but the balance of his time was devoted to personally superintending the management of the mine, and therefore half his salary was a deductible item and the other half was not. However, if this be the reason, we are at a loss to understand why part or all of the salary of the assistant manager was not allowed as a deduction, since the record shows that he devoted the major portion of his time to the actual superintending of the operation of the mine in the extraction and marketing of the ores and the development and extension work necessary to continue the productive life of the mine.

The court made findings of fact to the effect that the salaries paid the manager and assistant manager were reasonable and were in addition to, and separate from, any salaries paid them as corporate officers (that is, as president, treasurer, and director), and that the manager and assistant manager were residents of this state. It would seem to follow from this finding that the plaintiff should be entitled to a deduction of the amount of such salaries from gross earnings in order to compute the net proceeds of the mine. The trial court reached a different conclusion, and refused to decree such deduction

on the authority of the decision of this court in *Tintic Standard Mining Company* v. *Board of Equalization and Assessment et al.*, 77 Utah 353, 295 P. 249, 250. The trial court rightly followed the decision in that case, as there was no other proper course open to it except to follow and apply the decision of this court. That case was one brought in this court by the present appellant for writ of mandate against the state board of equalization, requiring such board to allow deductions of the annual salaries of its manager and assistant manager for the year 1926. The present action to recover taxes paid for the year 1925 was at that time pending in the district court of Utah county. That decision was written July 30, 1927, but was not published until 1931. It was announced per curiam, and is as follows:

"A majority of the members of the court are of the opinion that the demurrer should be sustained on the grounds: (1) That it is not alleged in the petition that the compensation paid Raddatz and Wade was reasonable or just or that the services alleged to have been rendered were of the reasonable value paid; (2) that it is not alleged in the petition that either Raddatz or Wade was a resident of the state of Utah or residing therein; and (3) that under chapter 114, Laws Utah 1919, the board is not authorized to deduct as costs or expenses any salary or compensation paid to any corporate officer of a mining company whether such salary or compensation was paid to such officer as such or for any other purpose or in any other capacity. In other words, any salary or compensation paid to a corporate officer of a mining company, no matter for what purpose it was paid to him, may not be deducted as costs or expenses within the meaning of section 5931, c. 114, Laws Utah 1919. And hence the petition should be dismissed and the writ applied for denied. All members of the court concur as to the first stated ground of the demurred. A minority dissent as to the stated second and third grounds."

The original order made, but not printed, contains, in addition to the quoted decision, the following:

"Opinions later will be prepared and filed wherein the views of the court and of the dissenting members will be more fully expressed."

So far as that case in effect holds the act of 1919 constitutional, it is affirmed, but to the extent that it is a con-

struction and application of the statute inconsistent with the view expressed in this opinion it is overruled. We have less hesitancy in thus holding, since the decision was by a divided court and was not intended at the time to be the final opinion in the case. The per curiam opinion was written and filed as an emergency decision. It is merely a statement of conclusions. Its preparation was necessarily hurried, and was filed only two days before the expiration of the statutory time within which the board of equalization must fix the valuation of the mine for tax purposes. It is evident from the order made that a more considered opinion was intended to be written, expressing the reasons of the court for the decision and also the reasons of the dissenting members for their dissent. At no time was an opinion of the court giving reasons for the decision, or an opinion of the dissenting members, prepared or filed. The time within which the defeated party might be expected to file a motion for rehearing probably never started to run, since the case was left open for another opinion to be prepared and filed which would state the reasons for the decision and furnish ground, if the defeated party decided to use it as such, for a motion for rehearing. We are satisfied the decision so far as it affects the construction of the statute is manifestly wrong and should be corrected at the earliest opportunity. The doctrine of stare decisis is not applicable, for the reason that the former decision was probably not yet final, as it was not intended to be the final decision in the case and was not printed until long after it was announced, so that no rule of law has been established with respect to the subject, and no rights were acquired, nor any course of conduct or dealings established because of it. See dissenting opinion of Mr. Justice Straup in *State* v. *Packer Corporation,* 77 Utah 500, 297 P. 1013; 7 R. C. L. 1008.

In the mandamus case this court by unanimous concurrence held that salaries claimed as deductions must be shown to be reasonable. This holding is undoubtedly sound and is

reaffirmed. It can be implied from the law and the definition of the term "net proceeds of mines," as understood at the time of the adoption of the constitutional amendment, that the owner of a mine may not be allowed a deduction of more than a reasonable sum as salary of any of its managing officials. If corporations or associations or individual owners of a mine were to pay to themselves or to their officers exorbitant or unreasonable salaries under any pretext whatever, and be allowed deduction therefor, thus decreasing the amount of the net proceeds of the mine for taxation purposes, such practice would defeat the clear intent of the Constitution.

We now come to the question of the claimed deductions for the purchase of shafts and development workings on the Iron Blossom ground. By its second amended complaint, appellant alleges that, in the carrying out of its plan of extension and development of its mines and mining claims, it expended in the year 1925 for the purchase of two shafts and development workings in the Iron Blossom Mining Company claims the sum of $206-294.01; that these improvements were constructed prior to the year 1925, but were never returned by the owners of the Iron Blossom Mine as an improvement in reduction of its taxes. The answer admitted the purchase of the Iron Blossom property, including the two shafts and the amount alleged to have been paid therefor; and that the shafts had been dug and the property developed by the predecessors in interest of appellants prior to 1925, and alleged that no part of the work had been paid for by appellant nor had it been done by its supervision or control, and denied the other allegations, including the one that the cost of the shaft had not been returned as an improvement in the reduction of taxes. The proof showed that, in pursuance of its policy of development and expansion, after a careful geological survey of the district, and for the purpose of extending the productive life of the corporation, the appellant purchased in 1925 all of the property of the Iron Blossom Mining Com-

pany, consisting of several mining claims, upon which were located two shafts, one of a depth of 2,185 feet and the other of 590 feet; also mining machinery and surface improvements and fully developed ore bodies; $375,000 was paid for the entire property. Included in this sum was $30,972.50, the value of machinery, buildings, and plant equipment and $205,789.79, the net value of the two shafts. The price paid for the shafts was less than the estimated cost of construction of similar shafts and developmental workings, if done at the time purchased. The shafts and developmental workings were principally beneficial to the appellant in developing possible ore bodies in the Iron Blossom claims, and in the Iron King mining property, adjacent thereto, in which appellant owned a controlling interest. Some ores were extracted from the Iron Blossom mine in 1925, and the value thereof was returned in the total of gross receipts reported for tax purposes. There was a stipulation between counsel to the effect that all claims by the Iron Blossom Company for deductions and work done made to and allowed by the board of equalization were the basis upon which taxes were paid by that company during the year 1920 and up to 1925, when it sold its property to the appellant.

In making its return to the state board of equalization in 1925, appellant claimed as deductions the amount paid the Iron Blossom Company for the mining machinery and buildings and plant equipment and also for the amount paid for the shafts and developmental workings in the mine. The board allowed a deduction on account of purchase of the machinery, buildings, and equipment, but denied any deduction of the purchase price of the shafts. Appellant contends that this expenditure is a lawfully deductible item for the year 1925, which is the year in which it made the expenditure in acquiring the property, pursuant to provisions of Comp. Laws Utah 1917, § 5931, as amended by c. 114, Laws Utah 1919, as follows:

"There must be allowed all money expended * * * for improvements and the repair thereof, necessary in and about the workings of the mine for extracting and reducing the ore * * *; but the money invested in the mines or improvements during any year except the year immediately preceding such statement must not be included therein."

We see nothing in the statute which by any fair construction would justify a deduction of the amount of the investment made by appellant in acquiring the Iron Blossom shafts or mine workings. The statute authorizes deductions for improvements and repairs thereof necessary in and about the workings of the mine for extracting and producing the ore for the year immediately preceding the return, but this does not contemplate money expended in capital investments of the kind in question. Appellant bought the Iron Blossom mine and mining claims. The value of the ground and ore bodies was enhanced because of the shafts and workings in the ground. These were a part of the mine. The ore bodies were more valuable because the shafts made them accessible. It is not claimed that the money paid for the ground and the ore bodies therein should be deducted. We see no reason to put the shafts in a different classification. No case directly in point has been cited to us by either side, and we have found none. Cases somewhat similar are *Mammoth Mining Co.* v. *Juab County,* 51 Utah 316, 170 P. 78, and *State ex rel. Bourquin* v. *State Board of Equalization,* 67 Mont. 340, 215 P. 667. In the Mammoth Case it was held that the cost of the mining low grade ore and placing it in a dump in previous years could not be deducted from the gross proceeds of the year in which the dump was worked, but the only deductible allowance was the cost of extracting the values from the dump. In the Bourquin Case, under a similar tax law, it was held that an item designated "cost of ore purchased" was not a deductible allowance from gross proceeds for the year the expenditure was made. The owner of the Black Rock Mine during a number of preceding years had by mistake ex-

tracted ores from adjoining ground, not owned by it. As a result of litigation, it was compelled to pay the owner of the adjoining ground the value of the ores thus extracted. This was the item of expense which it attempted to have deducted as cost of ores purchased, but the court held this was not an allowable deduction.

It is argued by appellant that, since a deduction was granted for the price paid for plant equipment, machinery, and buildings on the Iron Blossom property, it would have been consistent for the board to also allow deductions for the amount paid for the shafts. We see a substantial difference between the two items. The machinery, plant, and buildings were, under the Constitution and law, required to be assessed independent of the mine or the net proceeds thereof, at full value for purposes of taxation, and it is presumed this was done and the tax paid thereon. It would have amounted to double taxation if no deduction had been allowed for these items. The shafts are comparable to the drain tunnel in *Ontario Silver Mining Co.* v. *Hixon,* 49 Utah 359, 164 P. 498, held to have no value separate and independent of the mine, and therefore not assessable as an improvement. A mine shaft is not in the same class of property as machinery and surface improvements which have a separate and independent value for taxation purposes.

It was not proved, as alleged in the complaint, that the expense of constructing the two shafts was never returned by the owner of the Iron Blossom as an improvement in reduction of its tax, but, even if such had been the proof, the failure of the company to assert its claim in previous years would not justify a deduction of the accrued costs in any subsequent year. The law will not permit a correction or readjustment of taxes to be made in any such manner. *State ex rel. Bourquin* v. *State Board of Equalization,* supra. The stipulation was that such claims as were made by and allowed to the Iron Blossom Company formed the basis of the tax it paid during the years of construction of the shafts. Even in the absence of such a stipulation, the presumption

must be indulged that the owner of the property was allowed deductions in the full amount of the cost of these improvements each year, as they were made, as against the net annual proceeds of each year. But, if the owner failed to claim a deduction for expenditures in any one year, there is no warrant in law for claiming such expenditures as a deduction in any subsequent year.

· It is also contended that the cost to the appellant of the shafts should be deducted because the ore produced from the Iron Blossom claims was returned in the amount of the gross proceeds for the year, and that such proceeds would not have been available to appellant except for the use of the shafts. This argument, we think, is answered in the case of *Mammoth Mining Company* v. *Juab County*, supra. It is obvious, however, that, had the mine been worked by the Iron Blossom Company in the year 1925, it would not have been allowed to return as expense of extracting the ores, the amount expended in previous years in projecting the shafts. Only the actual expenditures in money and labor for extracting the ores would have been allowed, and these undoubtedly were allowed the appellant by the board of equalization in computing the net proceeds for the year 1925. We do not see how the tax can be defeated by a change in the ownership of the mine, even though it be shown that the new owners paid a reasonable value for the mining claims, including the shafts and other developmental workings. The trial court was undoubtedly right, as was also the state board of equalization, in concluding this item was not an allowable deduction for the year 1925.

The record discloses that the trial court granted a nonsuit on motion of respondent and also thereafter made and filed its findings of fact, conclusions of law, and judgment dismissing the cause. Complaint is made of this method of disposing of the case, and particularly that the motion for nonsuit did not state specifically the ground on which it was based. We are at a loss to understand why the court handled the case in this manner, be-

cause, upon granting of a motion for nonsuit, the court thereupon divested itself of the power to do more than enter judgment of dismissal, or upon motion for new trial to grant a new trial or to deny the motion. *Robinson* v. *Salt Lake City*, 37 Utah 520, 109. P. 817. These questions, however, need not be discussed, as appellant suffered no prejudice thereby, in view of the disposition of the case on the grounds stated.

The judgment is reversed, and the cause remanded to the district court of Utah county, with directions to grant a new trial and to proceed in conformity with this opinion. Each party shall bear his own costs on this appeal.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.